The STATE ex rel. JENKINS

v.

CITY OF CLEVELAND.

[Cite as *State ex rel. Jenkins v. Cleveland* (1992), 82 Ohio App.3d 770.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 59513.

Decided Aug. 28, 1992.

*William S. Lazarow* and *Dale A. Baich*, for relator.

*Danny R. Williams*, Law Director, *Kathleen A. Martin*, Chief Assistant Law Director, and *Joseph J. Jerse*, Assistant Law Director, for respondent.

*Stephanie Tubbs Jones*, Cuyahoga County Prosecuting Attorney, and *Carol Shockley*, Assistant Prosecuting Attorney, for intervenor.

JOHN F. CORRIGAN, Presiding Judge.

Relator Leonard Jenkins was convicted of the aggravated murder of Police Officer Anthony Johnson and sentenced to death.[1] After exhausting his direct appeals, Jenkins commenced this mandamus action on March 23, 1990, against the city of Cleveland and several of its officers (*i.e.,* the Director of Public Safety, the Chief of Police and the Mayor; hereinafter collectively referred to as "the city"). The purpose of the mandamus action is to force production of the following records pursuant to the Ohio Public Records Act, R.C. 149.43: (1) the investigation of the October 21, 1981 homicide of Anthony Johnson; (2) the investigation, arrest, detention, and interrogation of Lester Jordan; (3) the investigation, arrest, detention, and interrogation of Leonard Jenkins; (4) the arrest records of Lester Jordan and Leonard Jenkins; (5) the use of deadly force by Cleveland Police Officers John Myhand, Anthony Johnson, Jerome Howard and Gregory L. Henderson; (6) the use of deadly force by Cleveland police officers or other individuals against Leonard Jenkins, Douglas H. Robinson, and Anthony Johnson; and (7) complaints made against the city of Cleveland, its police department or any of its officers by Douglas H. Robinson and any other individuals relating to the use of force by Cleveland police officers on October 21, 1981.

On August 15, 1990, this court granted the Cuyahoga County Prosecutor's motion to intervene as a respondent to protect whatever interest that office may have in the records. Since that time the city has located eighty-one records which come within the scope of Jenkins's request. Of these the city has released forty-nine and has submitted thirty-two under seal for *in camera* inspection. The city redacted some information on one of the forty-nine released records, and submitted the complete unredacted version to this court under seal for inspection.

All the parties have briefed the issues. They are: (1) whether a blanket exemption for the disputed records exists because of the criminal discovery rules, the trial preparation exception or the work product exception; (2) the applicability of the specific statutory exceptions to the records in this case, especially the work product exception and the trial preparation exception.

### General Principles

### The Statute

R.C. 149.43(A)(1) defines a public record as "any record that is kept by any public office * * * except medical records, records pertaining to adoption,

---

**1.** See *State v. Jenkins* (1984), 15 Ohio St.3d 164, 15 OBR 311, 473 N.E.2d 264, for the facts upon which Jenkins was convicted.

probation, and parole proceedings, records pertaining to actions under section 2151.85[2] * * * and to appeals of actions arising under that section, records listed in division (A) of section 3107.42[3] * * *, trial preparation records, confidential law enforcement investigatory records, and records the release of which is prohibited by state or federal law."

R.C. 149.43(A)(2) further defines "confidential law enforcement investigatory record" as any record that pertains to a law enforcement matter of a criminal, quasi-criminal or administrative nature, but only to the extent that the release of the record would create a high probability of disclosure of the following: (a) the identity of a suspect who has not been charged with the offense to which the record pertains; (b) the identity of an information source or witness to whom confidentiality has been reasonably promised, or information which would compromise the identity of a confidential information source or witness to whom confidentiality has been reasonably promised; (c) specific confidential investigatory techniques, procedure or work product; or (d) information which would endanger the safety of a crime victim, witness, confidential source or law enforcement officer.

Subsection (A)(4) also defines "trial preparation record" as any record that contains information that is specifically compiled in reasonable anticipation of, or in defense of, a civil or criminal action, including the independent thought processes and personal trial preparation of an attorney.

### Common-law Interpretation

In interpreting this statute the Ohio Supreme Court has repeatedly ruled in favor of disclosing records. *State ex rel. Beacon Journal Publishing Co. v. Univ. of Akron* (1980), 64 Ohio St.2d 392, 18 O.O.3d 534, 415 N.E.2d 310 (law enforcement records which chronicled factual events related to the police were not exempt); *State ex rel. Multimedia, Inc. v. Whalen* (1990), 48 Ohio St.3d 41, 549 N.E.2d 167; *State ex rel. Cincinnati Post v. Schweikert* (1988), 38 Ohio St.3d 170, 172, 527 N.E.2d 1230, 1231 ("The Act represents a legislative policy in favor of the open conduct of government and free access to government records"); *Barton v. Shupe* (1988), 37 Ohio St.3d 308, 525 N.E.2d 812 (records of an investigation of a police official to determine accuracy of accusations are public records and not trial preparation material). Furthermore, the court generally has rejected the idea of a blanket exemption: "the General Assembly sought to guard against these exceptions swallowing up

---

2. R.C. 2151.85 governs the ability of an unmarried minor to seek an abortion without notice to parent or guardian.

3. R.C. 3107.42(A) concerns the confidentiality of certain adoption records.

the rule which makes public records available." *Beacon Journal, supra,* 64 Ohio St.2d at 398, 18 O.O.3d at 538, 415 N.E.2d at 314. See, also, *State ex rel. Clark v. Toledo* (1990), 54 Ohio St.3d 55, 560 N.E.2d 1313 (*"Clark I"*), and *State ex rel. Zuern v. Leis* (1990), 56 Ohio St.3d 20, 564 N.E.2d 81.

In *State ex rel. Natl. Broadcasting Co. v. Cleveland* (1988), 38 Ohio St.3d 79, 526 N.E.2d 786 (*"NBC I"*), the Ohio Supreme Court established broad rules for examining records for disclosure. Law enforcement investigatory records must be disclosed unless they fall within one of the statutory exemptions. The government has the duty to disclose such records, including those parts of a record which do not fall within an exemption. The government also has the burden of proof that the records are excepted from disclosure. If the status of a record is disputed, then the record must be submitted to the court for individualized inspection. In conducting the inspection if the court finds that the records contain excepted information, such information must be redacted and any remaining information must be ordered released. The court is to resolve all doubts in favor of disclosure. The Ohio Supreme Court again rejected the concept of a blanket exemption, especially as applied to the investigatory work product exception (R.C. 149.43[A][2][c]). The content of the record not the fact that it was made during an investigation determines whether it should be disclosed.

In *State ex rel. Dayton Newspapers, Inc. v. Rauch* (1984), 12 Ohio St.3d 100, 12 OBR 87, 465 N.E.2d 458, the Ohio Supreme Court affirmed the principle that the statutory exceptions are to be strictly construed against the government. However, it also held that autopsy reports in criminal cases are exempt under the investigative work product exception. Similarly, in *State ex rel. Natl. Broadcasting Co. v. Cleveland* (1991), 57 Ohio St.3d 77, 566 N.E.2d 146 (*"NBC II"*), the court reaffirmed the above principles, including the necessity to conduct an *in camera* inspection to redact protected information and the narrow application of the exceptions, *e.g.,* the trial preparation exemption. Nevertheless, a record is not to be automatically released just because it was produced pursuant to routine procedures. If the record comes within a statutory exception, it is to be redacted. The court also emphasized that the mere passage of time or inaction on the information does not transform a protected document into a public record.

The court has further ruled that when protected information is inextricably intertwined with the rest of the record, it is appropriate to withhold the entire record. *State ex rel. Thompson Newspapers, Inc. v. Martin* (1989), 47 Ohio St.3d 28, 546 N.E.2d 939; *State ex rel. McGee v. State Bd. of Psychology* (1990), 49 Ohio St.3d 59, 550 N.E.2d 945; *State ex rel. Polovischak v. Mayfield* (1990), 50 Ohio St.3d 51, 552 N.E.2d 635.

In several cases the Ohio Supreme Court has ruled that if a relator has an adequate remedy to obtain the records, he may not use the extraordinary relief of mandamus to procure them. In *State ex rel. Shane v. New Philadelphia Police Dept.* (1990), 56 Ohio St.3d 36, 37, 564 N.E.2d 89, 90, the court held "that a criminal defendant may not obtain a writ of mandamus under R.C. 149.43 to secure public records when he may litigate his right to obtain these records in his criminal case." Similarly, in *Hastings Mut. Ins. Co. v. Merillat* (1990), 50 Ohio St.3d 152, 553 N.E.2d 646, the court upheld a decision that a civil litigant may not use the Public Records Act's mandamus remedy to obtain police investigatory records, when such litigant may use the civil discovery process, including appeal after final judgment, to achieve the same result.

These general principles provide the parameters within which to judge the arguments of the parties and scrutinize the individual records.

### The Criminal Discovery Rules

■ The respondents have argued that Crim.R. 16 and 17 preclude disclosing the disputed investigatory records. They assert that these criminal discovery rules are the law which governs disclosure of prosecutorial and criminal investigatory materials. Thus, under the incorporation clause of R.C. 149.43(A)(1), these rules are another state law which prohibits the release of the records. Alternatively, they argue that the criminal discovery rules provide or provided Jenkins with an adequate remedy at law which defeats his mandamus action. As a variant on this argument, the city submits that Jenkins has an adequate remedy at law through the use of general civil discovery in a post-conviction proceeding.[4]

The respondents further argue that any ruling which would allow a person to use R.C. 149.43 to obtain investigatory files will undermine the criminal discovery rules, if not render them unconstitutional. Furthermore, such use of the Public Records Act risks compromising the integrity of the criminal justice system. If widespread access to investigatory files is allowed, perpetrators may be able to more easily evade arrest and prosecution. Knowing police techniques, they may be able to successfully counter the investigation. They may also have earlier and more complete knowledge of the evidence against them, again giving them a better opportunity to defeat their prosecution. Additionally, citizens may be less willing to cooperate with the police if they know that their actions are going to be matters of public record.

---

4. The prosecutor, however, argues that civil discovery is not available to post-conviction relief petitioners and that this fact indicates that the General Assembly did not intend for such petitioners to have access to their criminal files.

The Ohio Supreme Court rejected these arguments in *State ex rel. Clark v. Toledo* (1990), 54 Ohio St.3d 55, 560 N.E.2d 1313. In the syllabus the court held: "A criminal defendant who has exhausted the direct appeals of his conviction may avail himself of R.C. 149.43 to support his petition for post-conviction relief." The present case is indistinguishable from *Clark*. Both Jenkins and Clark were convicted of aggravated murder and sentenced to death. They have both exhausted their direct appeals and are now seeking records to support their post-convictions petitions. Accordingly, Jenkins is entitled to use R.C. 149.43 to try to obtain his investigatory file or other records. The criminal discovery rules present no barrier to disclosure in this case.

Similarly, the respondents' arguments that Jenkins has an adequate remedy through the discovery rules is not persuasive. The Ohio Supreme Court has explicitly ruled that a petitioner for post-conviction relief may use the Ohio Public Records Act to support his petition. This includes enforcing the Act through its statutorily provided mechanism of mandamus. The procedural posture of *Clark* was an appeal from the denial of the mandamus, which the appellate court dismissed for failing to establish one of the requisites for that action. Thus, the Supreme Court has implicitly held that no adequate remedy generally exists. Furthermore, the Ohio Supreme Court has repeatedly ruled against a blanket exemption in favor of individualized scrutiny of the records. To rule that discovery provides an adequate remedy in these post-conviction proceedings would be to disregard the rulings of the Ohio Supreme Court on these matters.

Moreover, civil discovery in post-conviction proceedings may not be an adequate remedy. Under R.C. 2953.21 the trial judge may summarily dismiss a post-conviction petition before discovery is allowed. This may often prevent a petitioner from engaging in civil discovery. See, also, *State v. Robison* (June 19, 1989), Pickaway App. No. 88CA15, unreported, 1989 WL 72802 ("No right to discovery or disclosure of evidence dehors the record exists at the initial stage of the proceeding").[5]

The court's ruling in the present case neither obliterates the criminal discovery rules nor renders them unconstitutional. As in *Clark*, the issue of the effect of the Public Records Act on a pending criminal case is not directly before the court, and the court does not decide that issue. Furthermore, in *Shane, supra,* and *State ex rel. Scanlon v. Deters* (1989), 45 Ohio St.3d 376,

---

5. The prosecutor's argument, that the absence of a discovery provision in the post-conviction relief statute means that the legislature did not intend for defendants to have access to investigatory files, is equally unpersuasive. The General Assembly did not explicitly exclude them from using the Public Records Act. The *Clark* decision clearly holds that they may.

544 N.E.2d 680, the Ohio Supreme Court preserved the role of the criminal discovery rules in pending criminal cases. The court held that the discovery process in a pending criminal case provides an adequate remedy for obtaining the records at the trial level, thus precluding the use of the Public Records Act's mandamus provision to secure the records.

### Work Product Exemption

■ The respondents claim the work product exemption or the confidential investigatory technique or procedure exemption (R.C. 149.43[A][2][c]) for almost every disputed record. In asserting this near blanket exemption, the respondents argue that the very process of recording the steps of a criminal investigation requires and reveals the investigators' thought processes and analysis. The investigators must decide what questions to ask witnesses and what information to try to elicit. The officers then use their subjective analysis in assessing the information, the credibility of the source, deciding what to record, how to organize it, etc. They must then further determine which leads to follow and how to proceed with the investigation. These thought processes so permeate all of the records that all criminal investigatory records are thus transformed into confidential investigatory technique, procedure or work product.

■ This argument is not persuasive for granting a blanket exemption. The decisions of the Ohio Supreme Court have repeatedly ruled against a blanket exemption. *Beacon Journal, supra.* Moreover, in *NBC I*, 38 Ohio St.3d at 83–84, 526 N.E.2d at 789–791, the court narrowly interpreted this statutory exemption. It protects only those portions of a record which demonstrably reveal an investigator's deliberative and subjective analysis, his interpretation of the facts, his theory of the case, and his investigative plans. The exception does not protect the objective facts and observations an officer has recorded.

■ After reviewing the records this court finds that most of them do not demonstrably reveal the mental impressions and subjective analysis of the investigators. Rather, most of them merely chronicle matters which were related to the officers or otherwise record objective facts. Thus, the work product exception does not provide a blanket exemption for these investigatory records. *NBC I, supra.*

In the present case there was undeniable criminal activity, which from the onset demanded investigation and prosecution. However, this difference does not render the principles enunciated in *NBC I* irrelevant. Even in investigations of serious crime, the recordation of facts is to be disclosed unless protected by a specific exception.

■ Nevertheless, the work product exemption does protect portions of the records in the present case. A number of the records contain the subjective deliberations of the officers. The material redacted really cannot be characterized as empirical facts. In certain instances simple investigatory plans were also included in the records. Accordingly, these sections are ordered redacted. *NBC I, supra; State ex rel. Martin v. Cleveland* (Jan. 8, 1992), Cuyahoga App. No. 60977, unreported, 1992 WL 2861; *State ex rel. Johnson v. Cleveland* (Sept. 30, 1991), Cuyahoga App. No. 60964, unreported, 1991 WL 200273, affirmed (1992), 65 Ohio St.3d 331, 603 N.E.2d 1011.

■ In *Rauch, supra,* the Ohio Supreme Court declared that autopsy reports were exempt from disclosure because the autopsy report itself was the investigation. *Id.,* 12 Ohio St.3d at 100, 12 OBR at 87, 465 N.E.2d at 458. In *NBC II,* the court reaffirmed this principle. *Johnson, supra.* This court has also held that other sophisticated, scientific tests would also be investigations and would be exempt from disclosure under R.C. 149.43(A)(2)(c). *State ex rel. Martinelli v. Cleveland* (Apr. 22, 1991), Cuyahoga App. No. 56461, unreported, 1991 WL 64349, appeal pending in case No. 93–585; *State ex rel. Apanovitch v. Cleveland* (Feb. 6, 1991), Cuyahoga App. No. 58867, unreported, 1991 WL 18676; *State ex rel. Williams v. Cleveland* (Jan. 18, 1991), Cuyahoga App. No. 57769, unreported, 1991 WL 6365; *State ex rel. Jester v. Cleveland* (Jan. 17, 1991), Cuyahoga App. No. 56438, unreported, 1991 WL 3545. *Apanovitch, Williams* and *Jester* were affirmed in *State ex rel. Williams v. Cleveland* (1992), 64 Ohio St.3d 544, 597 N.E.2d 147. Nevertheless, some examinations, such as fingerprint comparisons, are little more than perception. In such cases the records should be disclosed as recorded fact.

Some of the records in the instant case posed peculiar problems in determining whether they should be disclosed under this exception. For example, for record No. 1, although the information is from the autopsy report, the information revealed is merely slightly more detailed than what the Ohio Supreme Court revealed in *State v. Jenkins* (1984), 15 Ohio St.3d 164, 166, 15 OBR 311, 313, 473 N.E.2d 264, 271, *i.e.,* "Johnson subsequently died of a gunshot wound to the head." Similarly for record Nos. 3, 11, 31 and 32, which relate to forensic tests, the Ohio Supreme Court stated that during the trial there was considerable and often conflicting technical evidence. Thus, this court has a doubt as to whether this information has already been disclosed. Moreover, the tests discussed in record Nos. 3, 11, 31 and 32 appear to be relatively simple tests. These records merely report the results of the tests. They in no way relate the steps taken during the investigation or otherwise reveal analysis, deliberation or theorizing. Accordingly, resolving doubts in favor of disclosure, this court orders these records to be disclosed.

## Uncharged Suspect Exemption

██ R.C. 149.43(A)(2)(a) prohibits disclosing the identity of a suspect who has not been charged with the offense to which the record pertains.[6] The city claims this exception for several records (Nos. 2, 4, 6, 25–30 and TT). In conducting the *in camera* inspection the court found three records (Nos. 25, 26 and TT) to which this exception is applicable. These records contain specific information about certain individuals, such as their names, addresses, identifying numbers and criminal records, and further identify these individuals as suspects to crimes or possible crimes pertaining to the relevant record.

After carefully examining record No. 27 the court was unable to discern any possible uncharged suspect for any crime. Similarly in record No. 30 no specific person was identified as a suspect. Thus, this record does not come within the parameters of the uncharged suspect exemption.

Record Nos. 28 and 29 posed more subtle considerations. Although the relevant individual may have been briefly considered a suspect to the relevant crime, he was cleared of all criminal involvement so quickly that the city did not consistently claim the uncharged suspect exemption for him throughout its records. Therefore, the court has doubts whether the individual was really an uncharged suspect. Resolving those doubts in favor of disclosure, the court orders these records disclosed.

Record Nos. 2, 4 and 6 posed perhaps even more difficult issues.[7] The court doubts whether the offense, for which the individual may be an uncharged suspect, actually pertained to record Nos. 2, 4 and 6. Thus, the information may fall outside the parameters of the exception. Moreover, the court also doubts whether the city seriously considered this person as a suspect. The *in camera* inspection established that as soon as the city began "investigating" this person's involvement with the relevant crime, it discovered that it was

---

6. In *Clark I, supra,* the Ohio Supreme Court expressed its concern that widespread use of the Public Records Act could place an intolerable burden on the administration of the criminal justice system. The same concerns arise in this case. In their reports on a certain crime, the police often refer to other suspects to other crimes. To the extent that the purposes of the uncharged suspect exception are to prevent premature disclosure to perpetrators that they are suspects and to protect people's reputations, then the limitation on the exception "to the offense to which the record pertains" could frustrate those purposes. Given the way in which police records are prepared, the exception's current wording could cause uncharged suspects to be revealed, because they are mentioned in records which do not pertain to the relevant offense. Alternatively, the suspects could be protected, but at the cost of increased police paper work.

7. Although the city did not claim the uncharged suspect exception for record No. 5, disclosure of the second proper name in the last paragraph of that record could create a high probability of compromising the information which the city sought protected in record Nos. 2, 4 and 6.

physically impossible for the "suspect" to have committed the crime, because the "suspect" was in prison at the time. The situation posed is not unlike the situation posed for record Nos. 28 and 29. Therefore, because of the doubts caused by the peculiar facts presented in this public records mandamus action, the court orders these records to be disclosed.

## Trial Preparation Materials Exemption

 The respondents claim the trial preparation materials exemption (R.C. 149.43[A][4]) for all of the disputed records. They argue that the police are the investigative agents of the prosecutor. The police acted upon a reasonable suspicion of criminal activity when they investigated the murder of Officer Johnson, the attempted murder of Officer Myhand and the bank robbery. All of the actions of the police in recording their investigations were for the purpose of apprehending and prosecuting the perpetrators. The prosecutor further adds the criminal investigation file constitutes her trial preparation records. The respondents have also argued that it is absurd for the prosecutor to micro-manage every investigation.

Nevertheless, upon conducting the mandated *in camera* inspection, the court finds that these records are not exempt under the trial preparation materials exception. The logic of the respondents is counter to the purpose of the statute, which is to provide the people with ready access to all aspects of their government with only a few narrow exceptions. All doubts are to be resolved in favor of disclosure. *Clark, supra;* and *Beacon Journal, supra.* There are to be no blanket exemptions. In *Beacon Journal,* the Ohio Supreme Court admonished that the General Assembly drafted that statute so that the exceptions would not swallow up the general rule in favor of disclosure. Accepting the reasoning of the respondents would be to grant a blanket exemption when none was intended.

Moreover, the Ohio Supreme Court has consistently interpreted the trial preparation exemption narrowly. In *Barton v. Shupe, supra,* that court decided that an investigation of a police official to determine the accuracy of accusations against him is not a trial preparation record. In *NBC I,* the court held that investigatory records of the use of deadly force by the police were not trial preparation records, even though litigation arose from several of the incidents. In *Zuern, supra,* the Ohio Supreme Court rejected making a blanket exemption for investigatory files under the trial preparation exception. It held that this exemption was strictly limited in nature and that records compiled for multiple purposes do not qualify as trial preparation records. *Franklin Cty. Sheriff's Dept. v. State Emp. Relations Bd.* (1992), 63 Ohio St.3d 498, 589 N.E.2d 24. The *Zuern* court did note, however, that

documents in a criminal investigatory file may fall within the scope of the trial preparation exception.

Furthermore, the Ohio Supreme Court rejected the specific arguments of the respondents. In *State ex rel. Coleman v. Cincinnati* (1991), 57 Ohio St.3d 83, 84, 566 N.E.2d 151, 153, the court conceded that the "police may reasonably anticipate a 'criminal action or proceeding' within the meaning of R.C. 149.43(A)(4)," when they investigate homicides. Nevertheless, criminal investigatory files *generally* do not meet the requirements for the exemption, especially the "specifically compiled" requisite. The court reasoned that in reading the trial preparation exception *in pari materia* with the confidential law enforcement investigatory exceptions, the legislature "evidenced an intention to require police investigatory records to be released with only a few narrow exceptions." *Id.* at 84, 566 N.E.2d at 153. This intention would be defeated if all the records within criminal investigatory files could qualify as trial preparation materials and thus be exempt. The court also added that when enacting the trial preparation exception, the General Assembly envisioned that such documents would be "based upon trial strategy and the exigencies of litigation." *Id.* at 84, 566 N.E.2d at 153.

As a variant on the trial preparation argument, the prosecutor asserts that these records are all communications between a client (the government) and its lawyers, which are, thus, protected by the attorney-client privilege. The Ohio Supreme Court's reasoning in *Coleman, supra,* defeats this argument. By specifying narrow exceptions to confidential law enforcement investigatory records, the legislature promulgated the policy of general release for such records. To exempt these documents wholesale under the doctrine of the attorney-client privilege would frustrate the provisions and policies of the Ohio Public Records Act. The prosecutor's reliance on *Woodman v. Lakewood* (1988), 44 Ohio App.3d 118, 541 N.E.2d 1084, is misplaced because *Woodman* concerned a legal opinion prepared for Lakewood and not criminal investigatory records, the release of which is governed by R.C. 149.43.

Whether witness statements come within the scope of the trial preparation exception is often a difficult issue to resolve. Although the Ohio Supreme Court has significantly narrowed the scope of the trial preparation exemption, it has not defined its boundaries exactly. In *Zuern,* the Supreme Court affirmed the decision of the Hamilton County Court of Appeals that all of the disputed records, which included "witness statements," should be disclosed. However, the Supreme Court, in holding that there is no blanket exemption under R.C. 149.43(A)(4), did not analyze the specific "witness statements"; the court also noted that criminal investigatory files could

contain trial preparation materials. Similarly, in *Coleman, supra,* and *State ex rel. Apanovitch v. Cleveland* (Feb. 6, 1991), Cuyahoga App. No. 58867, unreported, 1991 WL 18676, witness statements were also ordered disclosed but the courts did not specifically discuss the witness statements involved. Thus, these decisions are not necessarily controlling in determining whether any given witness statement comes within the scope of the trial preparation exemption. The court must deduce whether a record comes within the trial preparation exception by carefully examining its form, the time and manner of its creation, its relationship to other records, its author, and the supporting materials, such as affidavits.

The form of the city's witness statements is indicative that they may be trial preparation materials. These records are verbatim, first-person narratives by the witness, often with a question and answer section. The statements are signed by the witness, affirming truthfulness, and they are further signed by other individuals who are "witnesses" to the main witness's signing. The statements furnish the prosecutor with the requisite direct testimony to proceed with a presentation to the grand jury or for the trial itself. These features ensure authenticity and provide the prosecutor with a tool for impeaching a witness or refreshing recollection. *State ex rel. Jester v. Cleveland* (Jan. 17, 1991), Cuyahoga App. No. 56438, unreported, 1991 WL 3545; *State ex rel. Williams v. Cleveland* (Jan. 19, 1991), Cuyahoga App. No. 57769, unreported, 1991 WL 6365; and *State ex rel. Hamblin v. Cleveland* (July 1, 1991), Cuyahoga App. No. 58013, unreported; *State ex rel. Martin v. Cleveland* (Jan. 8, 1992), Cuyahoga App. No. 60977, unreported, 1992 WL 2861.

However, the form is not the sole criterion for determining whether a record is a trial preparation record. The circumstances of its creation must be considered. For example, if the police take a potential defense witness's statement on the eve of trial and the questions indicate that the state is making sure that this person has no information which will damage the case, then this is very strong evidence that the witness statement is trial preparation. Conversely, if statements are systematically taken of all potential witnesses before it is determined that a crime is committed, then this is indicative that the statements are part of the general investigation and are not prepared exclusively or specifically for trial. *State ex rel. Martinelli v. Cleveland* (Apr. 22, 1991), Cuyahoga App. No. 56461, unreported, 1991 WL 18676; *State ex rel. Johnson v. Cleveland* (Sept. 30, 1991), Cuyahoga App. No. 60964, unreported, 1991 WL 200273. Moreover, any supporting materials are also important. A prosecutor's or police officer's affidavit swearing that a given record was prepared solely for trial is also strong, but not controlling,

evidence of its purpose. *Hamblin* and *Williams, supra*. The court must weigh all these factors in determining whether any given record comes within the trial preparation exemption. *NBC I, supra.*

 After carefully examining the disputed witness statements, the circumstances which surrounded their creation, the supporting affidavits, and all of the opinions relating to the trial preparation materials exception, especially *Zuern*, this court has doubts as to whether the witness statements in this case were prepared exclusively for trial. The police systematically took statements of all the witnesses involved in the bank robbery within approximately thirty hours of the incident. This was before an indictment was returned against Jenkins. Cf. *Franklin Cty. Sheriff's Dept., supra.* Moreover, the supporting affidavit does not state that the statements were prepared exclusively for use of the prosecutor. The court cannot dispel its doubts that the police were finishing their investigation when they took these witness statements. Resolving doubts in favor of disclosure, this court orders these witness statements be disclosed.

## Physical Safety Exemption

 R.C. 149.43(A)(2)(d) exempts information which would endanger the life or physical safety of law enforcement personnel, a crime victim, a witness or a confidential information source. The respondents claim this exemption for record No. 23. In the index of records the city states that this record contains the names, addresses and telephone numbers for the victim's relatives. The city, thus, submits that release of this information could risk the physical safety to those individuals. The city offers no evidence and little argument that the release of this information would actually jeopardize these specific individuals. Rather, the claim of the exemption appears to rest on the assumption that relatives of police officers or murder victims are necessarily at risk.

The safety of individuals is a proper concern of the government, and the public record law should not be allowed to be used so as to contribute to someone's death or injury. However, an assumption does not satisfy the burden of proof that a given record comes within the scope of specific exemption as required by *NBC I. State ex rel. Lowery v. Cleveland* (June 9, 1992), Cuyahoga App. No. 63242, unreported, appeal pending in case No. 92–1556; *State ex rel. Nelson v. Cleveland Police Dept.* (Aug. 6, 1992), Cuyahoga App. No. 62558, unreported, 1992 WL 198092. There is also a severe doubt as to whether the individuals sought to be protected come within one of the four groups mentioned in R.C. 149.43(A)(2)(d). Moreover, some of the information is available through other public records, such as birth certificates

and/or marriage licenses. *State ex rel. Lippitt v. Kovacic* (1991), 70 Ohio App.3d 525, 591 N.E.2d 422; *Johnson, supra.* Cf. *State ex rel. Natl. Broadcasting Co. v. Cleveland* (1992), 82 Ohio App.3d 202, 611 N.E.2d 838. Accordingly, this record is ordered released.

### Confidentiality Exemption

R.C. 149.43(A)(2)(b) exempts from disclosure information provided by a witness or information source to whom confidentiality has been promised if the information would reasonably tend to disclose a person's identity. The city claims this exemption for part of record No. 3.

The court recognizes the importance of the confidentiality exemption. Citizens should be able to confide in their government. Certain crimes may be solved only with the help of individuals who wish or need to remain anonymous. The government should be able to honor its word and its obligations when it promises confidentiality. However, for this particular record and this particular person, the evidence is lacking that the city actually promised confidentiality, as compared to this person just refusing to identify herself. Moreover, even if there was evidence that a promise of confidentiality was made, there is a doubt as to whether such promise would have been reasonable under the circumstances. *State ex rel. Natl. Broadcasting Co. v. Cleveland* (1992), 82 Ohio App.3d 202, 611 N.E.2d 838. Accordingly, the court orders the relevant portion of this record released.

### Miscellaneous Exemptions

The city also submits that all or portions of record Nos. 20, 21 and 22 are protected by other federal or state laws which prohibit their release. In his brief Jenkins concedes that if record No. 21 is a B.C.I. record and record No. 22 is an F.B.I. record, then the records would be exempt. The court has examined these records and they are what the city claims they are. Accordingly, these records are ordered redacted. Portions of record No. 20 are also exempt under these federal and state laws. *Johnson* and *Lippitt, supra.*

This court also orders that all social security numbers from all the records (record Nos. 16, 19, 24 and 25) be redacted. The release of this information is prohibited by other federal law. Section 405(c)(2)(C)(vii)(I), Title 42, U.S.Code. *Johnson* and *Lowery, supra.*

### Other Records Issue

Jenkins further questions whether the respondents have fully complied with all of the requests he made for records. The court has carefully studied the requests and made several orders to satisfy itself that all of the requests were fulfilled. Pursuant to these orders the city has made several searches and

several certifications regarding other records. The court is satisfied that the city has fulfilled its duty in honoring the requests.

Conclusion

In conclusion, Jenkins's petition for a writ of mandamus is granted in part and denied in part. Because all of the parties have the right to appeal from this judgment and because public records cases pose unique problems, it is important that the confidentiality of the records be preserved until either the parties exhaust their appeals or all of the parties agree to end the litigation. Accordingly, to preserve the status quo, this court will reseal the records submitted to it. In addition, the court will prepare a set of records in which all of the redactions have been made. This redacted set of records will be included under seal with the original set of records to aid the subsequent appeal of the case.

Costs of this action are taxed to the respondents.

*Judgment accordingly.*

ANN MCMANAMON and PATTON, JJ., concur.