95 F.3d 1157
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Stella KODMAN, Individually and as Guardian Ad Litem for
Matthew Dean Lane; Matthew Dean Lane, a minor
Plaintiffs-Appellants,
v.
The COUNTY OF MERCED; Merced County Child Protective
Services; Bernard Martinez; Shirley Corbin, individually
and as agents and employees of Merced County Child
Protective Services; John Cullen; Melody Archer; Hub
Walsh, individually and as the managing agents of Merced
County Child Protective Services, Defendants-Appellees.
 No. 94-16852, 94-17156.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Dec. 6, 1995.
Decided Aug. 21, 1996.
 
 Before: BROWNING, CANBY and HALL, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Appellant Stella Kodman, individually and as guardian ad litem for her minor son Matthew Lane, brought this 42 U.S.C. § 1983 action against, inter alia, the County of Merced, Merced County Protective Services ("CPS"), and social worker Shirley Corbin in her individual capacity (collectively "Defendants"). Kodman alleged civil rights violations arising from CPS's temporary removal of Matthew from her custody after Matthew and his grandmother made allegations of sexual abuse against Kodman's former husband. Kodman appeals from the district court's summary judgment in favor of Defendants, and Defendants cross-appeal the district court's denial of their motion for attorney's fees. This Court has jurisdiction under 28 U.S.C. § 1291. We affirm the summary judgment in favor of Defendants and the district court's denial of attorney's fees.
 
 I.
 
 3
 We do not set forth all of the facts relevant to Kodman's claims because the parties are familiar with them. Kodman argues that the district court erred in finding that Corbin was entitled to qualified immunity. We review de novo the district court's grant of qualified immunity. Neely v. Feinstein, 50 F.3d 1502, 1507 (9th Cir.1995).
 
 
 4
 Corbin is entitled to qualified immunity from suits under § 1983 if her official conduct " 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " Caldwell v. LeFaver, 928 F.2d 331, 333 (9th Cir.1991) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). "The contours of the right must be sufficiently clear that a reasonable official would understand that what [s]he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987). We therefore consider whether a reasonable social worker could have believed that taking Matthew into temporary protective custody was lawful in light of clearly established law and the information that Corbin possessed when she made the decision. Baker v. Racansky, 887 F.2d 183, 187 (9th Cir.1989).
 
 
 5
 " '[T]he parental liberty interest in keeping the family unit intact is not a clearly established right in the context of reasonable suspicion that parents may be abusing children.' " Id. (quoting Myers v. Morris, 810 F.2d 1437, 1463 (8th Cir.), cert. denied, 484 U.S. 828 (1987)). At the time of Matthew's removal, it was well established that a state agency may remove a child from a parent's custody without a prior hearing when the child is subject to immediate or apparent danger or harm. See Caldwell, 928 F.2d at 333. There were no firmly established constitutional standards governing the specific procedures that social workers must undertake before effectuating the temporary or emergency removal of a child in the context of a child abuse investigation. Baker, 887 F.2d at 187.
 
 
 6
 In Baker, this Court granted qualified immunity to a social worker who effectuated an emergency removal of a child when a non-offending parent was available to care for the child. At the time of the emergency removal, the alleged offender was unlikely to have contact with the child because he had been arrested and incarcerated. Id. at 184-85. We held that the social workers were entitled to qualified immunity because, on the basis of the circumstances then existing, they believed that the non-offending parent may have been unwilling or unable to protect the child if the offender were released from jail.
 
 
 7
 We have implied that social workers' interference with the parent-child relationship in the absence of any perceived emergency might violate parents' constitutionally protected interests. See Caldwell, 928 F.2d at 333. However, in light of some of the similarities between this case and Baker, we conclude that Corbin reasonably could have believed that placing Matthew in temporary foster care rather than releasing him to Kodman's custody did not violate clearly established constitutional rights. The information that Corbin possessed at the time of the removal reasonably allowed her to conclude that Matthew faced imminent harm. In addition to his grandmother's allegations, Matthew gave a detailed description of the alleged abuse in a separate interview with Corbin and a police officer. Moore also had informed Corbin that when she tried to discuss Matthew's allegations with Kodman, Kodman did not pay attention and did not believe her. Moore's assertions and the fact that Kodman regularly permitted Matthew to visit her ex-husband, Rod Kodman, provided a reasonable basis for Corbin's conclusion that Kodman would not protect Matthew from Rod and that Matthew was in imminent danger. Even if Matthew was unlikely to have contact with Rod within the next few days, Baker could have supported Corbin's belief that an emergency removal did not violate Kodman's established constitutional rights.
 
 
 8
 Corbin's failure to contact Kodman before placing Matthew in CPS custody also did not violate clearly established constitutional rights. Although there is some dispute regarding whether and when Corbin attempted to reach Kodman by telephone, it is undisputed that Kodman found out that Matthew was in CPS custody within a few hours of the emergency removal, when she called CPS and spoke with Corbin. In a situation necessitating the emergency removal of a child, post-deprivation notification is consistent with due process. See Donald v. Polk County, 836 F.2d 376, 381 (7th Cir.1988). Kodman has not shown that the delay in notifying her that Matthew was in CPS custody was so excessive that it violated due process. Id. At the least, there was no clearly established law that would lead a reasonable officer to believe that due process was being violated.
 
 
 9
 Corbin's failure to order a physical examination before the removal did not violate any established constitutional rule or statute. Corbin also was not obligated to believe that the abuse allegations were false just because Rod's attorney phone CPS to warn the agency of a potential charge. She reasonably could have believed that the phone call was an attempt to preempt a sexual abuse allegation that was true.
 
 
 10
 Kodman also contends that the district court improperly drew inferences adverse to her in considering the summary judgment motion. This claim is without merit. After a district court makes all inferences arising from the facts in the non-movant's favor, if there is no genuine issue of material fact the court determines whether the movant is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Once the district court resolved all factual inferences in Kodman's favor, it was not obliged to conclude that Corbin's actions were unreasonable. The district court was required to make a determination about the reasonableness of Corbin's conduct in light of existing constitutional standards.
 
 II.
 
 11
 Kodman argues that the district court erred in granting summary judgment in favor of the County because the County's de facto policy regarding the emergency removal of a child from his parent's custody is unconstitutional. We conclude that the district court properly granted summary judgment in favor of the County.
 
 
 12
 The County is not liable for Corbin's actions under § 1983 unless her allegedly unconstitutional acts were undertaken pursuant to an official policy or custom, Monell v. Department of Social Servs., 436 U.S. 658, 690 (1978), and the policy was the "moving force" behind the constitutional violation. City of Canton v. Harris, 489 U.S. 378, 389 (1989). Although the County's actual practices, rather than its express policy, may subject it to § 1983 liability, Monell, 436 U.S. at 690-91, Kodman did not offer evidence, other than her own allegations, that the County had an unconstitutional de facto policy of removing a child from the custody of a parent solely on the basis of the child's story.[1]
 
 
 13
 We also find no merit in Kodman's argument that CPS had de facto unconstitutional policies regarding investigations and proceedings following an emergency removal. Post-removal proceedings involve a great deal of prosecutorial discretion. Kathleen Septien, the caseworker who took the case over from Corbin, moved to dismiss the dependency petition because she could not substantiate the allegations. This event suggests that the County does not have a policy that causes social workers to maintain proceedings not supported by evidence. Because Kodman does not present any other significant evidence of de facto unconstitutional policies regarding post-removal proceedings, we conclude that the district court did not err in granting summary judgment on this basis.
 
 III.
 
 14
 Kodman argues that the district court erred in granting summary judgment in favor of the County by impermissibly inferring that Corbin was adequately trained and supervised. We conclude that the district court properly granted summary judgment on Kodman's inadequate training and supervision claims.
 
 
 15
 A municipality's failure adequately to train an employee can be considered an unconstitutional "policy" for purposes of § 1983 liability. City of Canton, 489 U.S. at 387. If a facially constitutional policy is unconstitutionally applied by an employee, the municipality "is liable if the employee has not been adequately trained and the constitutional wrong has been caused by that failure to train." Id. To be actionable under § 1983, the failure to train also must amount to a "deliberate indifference" to the rights of others. Id. at 388-89.
 
 
 16
 Kodman did not identify any particular respect in which Corbin's training was deficient. She simply asserted that the fact that Corbin received many hours of training does not mean that she was trained to avoid the invasion of constitutional rights, and that none of the CPS staff asserted that their training included methods for doing the job constitutionally. Kodman did not create a genuine issue of fact regarding whether the need for more or different training of CPS social workers was so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that County policymakers could reasonably be said to have been deliberately indifferent to the need. See id. at 390. We therefore conclude that the district court did not draw impermissible inferences or err in granting summary judgment in favor of the County on Kodman's training and supervision claims.
 
 IV.
 
 17
 Defendants cross-appeal the district court's denial of their request for attorney's fees under 42 U.S.C. § 1988. We review the district court's denial of attorney's fees for an abuse of discretion. Harris v. Marhoefer, 24 F.3d 16, 19 (9th Cir.1994).
 
 
 18
 Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 421-22 (1978), limits the availability of attorney's fees to prevailing defendants in civil rights actions. For a defendant to receive attorney's fees in a § 1983 action, the plaintiff's action must be meritless in the sense that it is "groundless or without foundation." Hughes v. Rowe, 449 U.S. 5, 14 (1980). We therefore award defendants in civil rights cases attorney's fees only in exceptional circumstances. Mitchell v. Los Angeles Community College Dist., 861 F.2d 198, 202 (9th Cir.1988), cert. denied, 490 U.S. 1081 (1989). We decline Defendants' invitation to reevaluate this Court's strict interpretation of Christiansburg, a matter which would require an en banc hearing in any event.
 
 
 19
 The district court found that Rod Kodman's claims, although immediately dismissed, did not merit an award of attorney's fees because he was proceeding pro se. Because pro se plaintiffs cannot be expected to recognize the legal merit of claims as easily as plaintiffs represented by counsel, Miller v. Los Angeles County Board of Education, 827 F.2d 617, 620 (9th Cir.1987), "[a]n unrepresented litigant should not be punished for his failure to recognize subtle factual or legal deficiencies in his claims." Hughes, 449 U.S. at 15. In light of his relationship with Matthew and his experience with CPS, it was reasonable for Rod Kodman to believe that his civil rights had been violated. The district court did not abuse its discretion in denying attorney's fees to Defendants for Rod Kodman's claims.
 
 
 20
 The district court also found that Stella Kodman's claims were not patently frivolous, unreasonable, or without foundation. As the district court noted, her opposition to summary judgment set forth some facts, law, and evidence to support her claims. We conclude that the district court did not abuse its discretion by refusing to award Defendants attorney's fees for their defense against Kodman's claims.
 
 
 21
 The district court also denied Defendants' request for attorney's fees under California Civil Procedure Code § 1038. The court found that because the action was not "wholly frivolous," the claims were not brought in bad faith or without reasonable cause. This determination was not an abuse of discretion.
 
 V.
 
 22
 We affirm the district court's grant of summary judgment in favor of Corbin on the basis of qualified immunity because, faced with the totality of the circumstances and our decision in Baker, a reasonable social worker could have believed that she was not violating clearly established constitutional rights. We also affirm the district court's grant of summary judgment in favor of the County because Kodman did not introduce evidence creating a genuine issue of material fact regarding any unconstitutional de facto policy of the County or inadequate training and supervision of social workers. Finally, we affirm the district court's denial of Defendants' attorney's fees.
 
 
 23
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Cir.R. 36-3
 
 
 [1]
 The only specific evidence Kodman offered in her motion opposing summary judgment was the CPS sexual abuse report and affidavit of an accused parent in another case. This other case, however, also involved an adult calling CPS to report behavior suggesting sexual abuse