**Clinton Roy CALDWELL,
Plaintiff–Appellant,**

**v.**

**John LeFAVER, Director of the Department of Social and Rehabilitation Services; Department of Social and Rehabilitation Services of the State of Montana; Gwen Farnsworth, Social Worker; Russell Francetich, Social Worker; and Mineral County, Defendants–Appellees.**

**No. 89–35327.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 11, 1990.

Decided March 20, 1991.

Julio K. Morales, Missoula, Mont., for plaintiff-appellant.

Dan G. Cederberg, Cederberg Law Firm, Missoula, Mont. and John H. Maynard, Chief Defense Counsel, Montana Tort Claims Div., Helena, Mont., for defendants-appellees John L. LeFaver, Director of the Dept. of Social and Rehabilitative Services, Dept. of Social and Rehabilitation Services of the State of Mont., Gwen Farnsworth, Soc. Worker, and Russell Francetich, Social Worker.

M. Shaun Donovan, Mineral County Atty., Superior, Mont., for defendant-appellee Mineral County.

Before WRIGHT, SCHROEDER and NORRIS, Circuit Judges.

SCHROEDER, Circuit Judge:

In this 42 U.S.C. § 1983 action, appellant Clinton Caldwell challenges the actions of Mineral County, Montana social workers who, on an emergency basis, removed Caldwell's minor children from his physical custody without notice or hearing and arranged for the children to be transported to Caldwell's former wife in the State of Washington. Caldwell and his former wife had joint legal custody of the two daughters pursuant to a divorce decree entered in the State of Washington. Caldwell contends that his constitutional rights were violated when the social workers arranged to transport the children outside the State of Montana without affording him notice and a hearing on the issue of whether there was an emergency justifying the removal. Caldwell does not claim that such removal itself could never have been validly accomplished, *contrast Baker v. Racansky*, 887 F.2d 183 (9th Cir.1989), but maintains that Montana should not have permitted the children to leave the jurisdiction until his rights were determined at a hearing. We hold that the social workers' conduct is shielded by qualified immunity.

Caldwell's action was filed against the Montana Department of Social Rehabilitation Services ("DSRS"); John LeFaver, Director of the DSRS; Gwen Farnsworth and Russell Francetich, social workers; and Mineral County, Montana. The district court dismissed the action against the DSRS and LeFaver, who had been sued only in his official capacity, finding them protected by eleventh amendment immunity. Caldwell has no serious dispute that the DSRS, a state agency, is an arm of the State of Montana; hence the DSRS and LeFaver enjoy such immunity. *Pennhurst State School v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 907, 79 L.Ed.2d 67 (1984); *Southern Pacific Transp. Co. v. City of Los Angeles*, 922 F.2d 498, 508 (9th Cir.1990). The district court also dismissed the action against Mineral County based on an agreement between Mineral County and the State of Montana. Pursuant to this agreement, the State of Montana assumed all of the county's responsibility under the Montana Dependent and Neglected Child Statutes. Because the record shows that Mineral County did not retain any responsibility to enforce the protective policies of the State of Montana, this dismissal is appropriate as well. *See Monell v. Department of Social Servs.*, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978).

The more difficult issue in the case concerns whether an individual social work-

er, Gwen Farnsworth, and her supervisor, Russell Francetich, also enjoy absolute immunity for their conduct in this case, as they contend, or whether they enjoy only qualified immunity. If the latter, then we must determine whether qualified immunity extends to the conduct at issue here.

The facts in this case are undisputed. On April 21, 1987, Caldwell's two daughters were removed from his home on an emergency basis and taken into temporary custody by Farnsworth and Francetich. Within a very short period of time, and without notice to Caldwell, Farnsworth and Francetich had the children transported by bus to their mother in the State of Washington. The social workers filed no petition with the court and did not seek a hearing before a judicial officer. Farnsworth and Francetich claim that their conduct falls within the scope of their duties in determining when to bring dependency proceedings, and thus they are protected by absolute immunity under our decision in *Meyers v. Contra Costa County Department of Social Services*, 812 F.2d 1154 (9th Cir.), *cert. denied*, 484 U.S. 829, 108 S.Ct. 98, 98 L.Ed.2d 59 (1987). We disagree.

In *Meyers*, we held that social workers are entitled to absolute immunity when performing "quasi-prosecutorial functions connected with the initiation and pursuit of child dependency proceedings." 812 F.2d at 1157. We then defined "quasi-prosecutorial functions" as those instances where a social worker contributes as an advocate to an informed judgment by an impartial decisionmaker. *Id.* In a later case, *Coverdell v. Department of Social & Health Services*, 834 F.2d 758 (9th Cir.1987), we extended absolute immunity to include "quasi-judicial" actions in the context of child welfare proceedings, such as the execution of a court order. *Id.* at 764–65.

The actions taken by Farnsworth and Francetich were neither quasi-prosecutorial nor quasi-judicial in nature. The defendants' actions did not aid in the preparation or presentation of a case to the juvenile court, *see Meyers*, 812 F.2d at 1157, nor were these actions taken in connection with or incident to ongoing child dependency proceedings, *see Babcock v. Tyler*, 884 F.2d 497, 503 (9th Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 1118, 107 L.Ed.2d 1025 (1990). Indeed, the procedure of transporting the children out of Montana to their mother in Washington seemed designed to avoid adjudication in the Montana courts altogether. *See Weller v. Department of Social Servs.*, 901 F.2d 387, 396 (4th Cir. 1990). Because the defendants were not acting under the supervision of a court, it is the qualified immunity standard, rather than the absolute immunity standard, which must govern their conduct. *See Meyers*, 812 F.2d at 1158.

Under the doctrine of qualified immunity, social workers are shielded from liability where their official conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Thus the issue becomes whether the defendants' conduct violated any clearly established constitutional or statutory right of Caldwell.

Caldwell claims that the defendants' conduct violated his constitutional interest, as a parent, in his children. It is clear that a parent has a constitutionally protected interest in the custody and care of his or her children. *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388, 1394, 71 L.Ed.2d 599 (1982); *Woodrum v. Woodward County, Okla.*, 866 F.2d 1121, 1124–25 (9th Cir. 1989). However, it is also clear that this interest is not absolute. In an emergency situation, a state agency may remove children from their parents' custody when the children are subject to immediate or apparent danger or harm. *See Baker*, 887 F.2d at 187–88; *Myers v. Morris*, 810 F.2d 1437, 1463 (8th Cir.), *cert. denied*, 484 U.S. 828, 108 S.Ct. 97, 98 L.Ed.2d 58 (1987). This case does not present a situation in which social workers interfered with the parent-child relationship in the absence of any perceived emergency. *Compare In re Juvenile Appeal*, 189 Conn. 276, 455 A.2d 1313 (1983).

Caldwell asserts he had a right to a post-deprivation hearing in Montana to de-

termine whether an emergency justified transporting the children to their mother in Washington, who shared legal custody. There are some decisions recognizing that a parent may have a cognizable due process right to a post-deprivation hearing when the state removes a child from the parent's custody on an emergency basis and places the child with an individual who does not enjoy legal custody. *See Weller,* 901 F.2d at 396; *Hooks v. Hooks,* 771 F.2d 935, 942 (6th Cir.1985); *Morrison v. Jones,* 607 F.2d 1269 (9th Cir.1979), *cert. denied,* 445 U.S. 962, 100 S.Ct. 1648, 64 L.Ed.2d 237 (1980). However, assuming such a right was clearly established in April 1987, we do not think that it vitiates the application of qualified immunity here. This is because Caldwell's children were not placed with a person who lacked legal custody rights. Indeed, there is no dispute that the policy being followed by Farnsworth and Francetich was one limited to situations in which the receiving parent had joint custody. Moreover, defendants aptly point out that the decision as to whether the best interests of the children lay in continuing custody with their father may be best left in the hands of the Washington court, which issued the custody decree. Generally, once a court takes jurisdiction over children and enters a custody decree, that court retains jurisdiction over custody issues that arise after the children leave that jurisdiction. *See* Parental Kidnapping Prevention Act of 1980, 28 U.S.C. § 1738A(d) (1988); *Meade v. Meade,* 812 F.2d 1473, 1475–77 (4th Cir. 1987).

It is also important to note that the policy action taken by defendants in this case has at least some support in a state statute. Section 41–3–301 of the Montana Code provides:

41–3–301. Emergency protective service.

(1) Any child protective social worker of the department of family services, a peace officer, or the county attorney who has reason to believe any youth is in immediate or apparent danger of harm may immediately remove the youth and place him in a protective facility. The department may make a request for fur-

ther assistance from the law enforcement agency or take appropriate legal action. The person or agency placing the child shall notify the parents, parent, guardian, or other person having legal custody of the youth at the time the placement is made or as soon thereafter as possible.

(2) No child who has been removed from his home or any other place for his protection or care may be placed in a jail.

(3) A petition shall be filed within 48 hours of emergency placement of a child unless arrangements acceptable to the agency for the care of the child have been made by the parents.

(4) The department of family services shall make such necessary arrangements for the youth's well-being as are required prior to the court hearing.

The statute authorizes the removal of any child in "immediate or apparent danger of harm" and the placement of that child in protective custody. Farnsworth and Francetich assert that under section 41–3–301(3), a social worker has two alternative placement options: the social worker can file a petition within 48 hours of emergency placement, or the social worker can ensure that arrangements for the care of the child have been made by the parents. When children are placed with a parent with legal custody, defendants assert, there is no need to file a petition because arrangements have been made with a parent as contemplated under subsection (3) of the statute. The district court adopted this interpretation of the statute, and we cannot say that such an interpretation is implausible on its face. For the reasons we have outlined, such an interpretation does not establish any conflict between the statute and the requirements of due process. Therefore, because we find that defendants Farnsworth and Francetich have not violated any clearly established constitutional or statutory right, we hold that they are protected by qualified immunity for their conduct here. *See Baker,* 887 F.2d at 190.

■ The district court properly dismissed all of the appellant's claims for

damages. While there are remaining claims for injunctive relief, appellant has not demonstrated any likelihood of repetition of the events that gave rise to this litigation. An individual's past exposure to alleged unlawful conduct is insufficient to establish standing to seek injunctive relief; instead, an individual must demonstrate the likelihood of similar injury in the future. *Coverdell*, 834 F.2d at 766. Thus, to the extent that the appellant seeks to represent a class of parents who might in the future have their children removed, he lacks standing.

AFFIRMED.