**Sherie SWEANEY, Plaintiff–Appellant,**

v.

**ADA COUNTY, IDAHO, a political subdivision of the State of Idaho; Vaughn Killeen, in his official capacity as Sheriff of Ada County; Joyce Michie, individually, and in her official capacity as Deputy Sheriff of Ada County; John Does, 1–10 and Jane Does 1–10, Defendants–Appellees.**

No. 96–35156.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 25, 1997.

Decided July 15, 1997.

---

Eric S. Rossman, White, Peterson, Pruss, Morrow & Gigray, Nampa, ID, for plaintiff–appellant.

Cary B. Colaianni, Ada County Prosecutor's Office, Boise, ID, for defendants–appellees.

Before: ALARCON, T.G. NELSON and THOMAS, Circuit Judges.

ALARCON, Circuit Judge:

Plaintiff-appellant Sherie Sweaney ("Sweaney") appeals from the district court's grant of summary judgment in favor of defendant-appellees Ada County, Ada County Sheriff Vaughn Killeen, and Ada County Deputy Sheriff Joyce Michie on her 42 U.S.C. § 1983 claim and supplemental state claims. Sweaney contends that the district court erred in holding that Deputy Michie was shielded from liability in this matter under the doctrine of qualified immunity and in denying her motion to amend her complaint. We affirm the dismissal of Sweaney's federal claim because we conclude that Sweaney did not have a clearly established right under federal constitutional or statutory law to strike her son with a belt on school grounds without law enforcement investigation of her conduct and the filing of a report with the county prosecutor at the time of the alleged misconduct. We further affirm the district court's dismissal of Sweaney's federal claims against Ada County and Sheriff Killeen and hold that the district court did not abuse its discretion in dismissing the supplemental state law claims. We also affirm the district court's denial of Sweaney's motion to amend the complaint because her proposed amendments would have been futile.

## I.

While walking home from Lake Hazel Middle School on January 11, 1993, Brian Sweaney was shot at by another student with a .22 caliber handgun. On that date, Joyce Michie was an Ada County deputy sheriff assigned to the Lake Hazel Middle School as a resource officer. As a resource officer, Deputy Michie spent 20 hours per week at the school and investigated all crimes that happened there. Deputy Michie investigated the shooting incident. Sweaney became upset with Deputy Michie because the suspects were allowed to remain at school for three days. Sweaney confronted her on at least one occasion.

On March 15, 1993, Brian failed to return home after basketball practice. Brian attempted to speak to his sister on the phone but the call was disconnected. He did not attempt a second call. When informed by her daughter that Brian had not returned from school, Sweaney went to the school to look for him. She took her daughter's leather belt.

Sweaney found Brian in the gym and led him to the hallway. Brian was wearing basketball shorts and a shirt. She yelled at him and struck him three or four times with the belt. Brian laughed at her and told her it did not hurt him. Sweaney hit him two or three more times and asked him if he had learned his lesson. After Brian said "no," Sweaney told him to go back to the gym and finish his practice. Sweaney returned later to pick up Brian after the practice session ended.

Bill Page, the basketball coach, and Michelle Peterson, a teacher at Lake Hazel Middle School, observed Sweaney strike her son with the belt. Peterson reported the incident to John Castain, a school counselor. Castain reported the incident to Deputy Michie.

Deputy Michie interviewed Brian Sweaney about the incident on March 16, 1993. Deputy Michie observed a bruise on Brian's arm and photographed it with a Polaroid camera. She destroyed the photographs because they did not accurately portray the bruise. Brian told Deputy Michie that the bruise "could have been from the belt or it could have been from something else." Deputy Michie described the bruise as "red outlined" and "about 1 1/4 [inches] long and 1/4 inch wide." Deputy Michie did not observe any other bruises on Brian's body.

Deputy Michie interviewed Sweaney over the telephone. Sweaney explained that she had been concerned for Brian's safety in light of the shooting incident and was scared when he failed to return home from school. Sweaney further stated that she struck Brian with a belt after he had "smarted off." Sweaney informed Deputy Michie that "if her son were to act again in the same manner, she would handle the matter in the same way." Deputy Michie prepared a report summarizing her investigation and submitted it to the Ada County Prosecutor's Office for a determination whether criminal proceedings should be instituted.

After reviewing Deputy Michie's report, Ada County prosecutor Alan White filed a misdemeanor complaint against Sweaney for willfully causing her son to be injured pursuant to Idaho Code § 18–1501(2).[1] The case was assigned to prosecutor Patrick Owen. In an affidavit filed in support of the motion for a summary judgment, Owen alleged that the

fact that there was apparently a mark on Brian Sweaney's wrist was not determinative in my decision to pursue this case. The fact that there was an eyewitness was important to my decision; ... the fact that Ms. Sweaney told Deputy Michie that she should mind her own business and that she would do the same thing again (with respect to hitting Brian with a belt) if she felt it necessary, strengthened my desire to prosecute this matter.

Sweaney was not arrested or incarcerated pending trial. Instead, she was issued a citation ordering her to appear for trial. A jury trial was held on October 25, 1993. The jury acquitted Sweaney.

On November 1, 1994, Sweaney filed this action against Deputy Michie, Ada County, and Ada County Sheriff Vaughn Killeen. The defendants filed a motion for summary judgment on October 17, 1995. They argued that the doctrine of qualified immunity compelled dismissal of this action against Deputy Michie. They also asserted that Sweaney's reliance on the doctrine of respondeat superior to support her claims against Ada County and Sheriff Killeen was misplaced.[2] The district court agreed and granted the motion. Sweaney filed this timely appeal.

## II.

Sweaney contends that the district court erred in concluding that a parent did not have a clearly established right under the Fourth and Fourteenth Amendment to discipline her son by striking him with a belt on public school grounds on the date Deputy Michie filed her report with the Ada County Prosecutor's Office. Specifically, she argues that the right to "familial privacy" is "firmly rooted in the fourteenth amendment to the United States Constitution." She argues that parents have a federally protected constitutional "right to incorporate reasonable corporal punishment as a manner of disciplining their children." We disagree.

■ The doctrine of qualified immunity shields government officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). In determining whether an official is entitled to qualified immunity, we must consider (1) whether the plaintiff has identified a specific federal statutory or constitutional right that has been allegedly violated, (2) whether that right was so clearly established as to alert a reasonable official to its parameters, and (3) whether a reasonable officer could have believed his or her conduct was lawful. *Newell v. Sauser,* 79 F.3d 115, 117 (9th Cir.1996).

■ The plaintiff bears the initial burden of proving that the right was clearly established. *Romero v. Kitsap County,* 931 F.2d 624, 627 (9th Cir.1991). To be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that *what he is doing* violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987) (emphasis added). Further, the right asserted must be "clearly established *at the time* of the challenged actions." *Mitchell v. Forsyth,* 472 U.S. 511, 528, 105 S.Ct. 2806, 2816, 86 L.Ed.2d 411 (1985) (emphasis added). Under this test,

---

**1.** Idaho Code § 18–1501(2) provides:

Any person who, under circumstances or conditions other than those likely to produce great bodily harm or death, willfully causes or permits any child to suffer, or inflicts thereon unjustifiable physical pain or mental suffering, or having the care or custody of any child, willfully causes or permits the person or health of such child to be injured, or willfully causes

or permits such child to be placed in such situation that its person or health may be endangered, is guilty of a misdemeanor.

**2.** The defendants did not seek dismissal of this action on the ground that Sweaney's claim could not support a judgment in her favor because the prosecutor determined that probable cause existed to file charges.

the plaintiff must "offer more than general conclusory allegations" that the defendants violated a constitutional right. *Backlund v. Barnhart,* 778 F.2d 1386, 1389 (9th Cir.1985). Thus, to support a judgment, the plaintiff "must show that *the particular facts* of his case support a claim of clearly established right." *Id.*

■■■ Sweaney has not cited any case that holds that the Fourth and Fourteenth Amendment protect a parent's right to inflict corporal punishment upon a child. The absence of any authority directly on point is not fatal to a section 1983 claim. *Blueford v. Prunty,* 108 F.3d 251, 255 (9th Cir.1997). A right is clearly established "[i]f the only reasonable conclusion from binding authority were that the disputed right existed." *Id.*

Sweaney relies on several Supreme Court decisions in support of her argument that the only reasonable conclusion from the case law published prior to the date Deputy Michie filed her report is that a parent has a clearly established right to inflict corporal punishment on his or her child. First, she argues that the Supreme Court "has repeatedly held that the right to familial integrity embodied in the fourteenth amendment is a substantial right and one that is, in fact, clearly established." Sweaney refers us to *Meyer v. Nebraska,* 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923); *Prince v. Massachusetts,* 321 U.S. 158, 64 S.Ct. 438, 88 L.Ed. 645 (1944); *Stanley v. Illinois,* 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972); *Skinner v. Oklahoma,* 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942); *May v. Anderson,* 345 U.S. 528, 73 S.Ct. 840, 97 L.Ed. 1221 (1953); and *Lassiter v. Department of Soc. Servs.,* 452 U.S. 18, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981), as authority that clearly established that a parent has a right to strike her child with a belt without being subjected to an investigation and the submission of a report to a prosecutor. None of these cases considered the question whether a parent has a right to strike a child with a belt without being subjected to an investigation and the submission of a report to a prosecutor.

In *Meyer,* the Court struck down a state statute prohibiting the teaching of foreign languages to students who had not yet passed the eighth grade. *Meyer,* 262 U.S. at 403, 43 S.Ct. at 628. The Court reasoned that the term "liberty" in the Fourteenth Amendment included the right "of the individual to ... establish a home and bring up children." *Id.* at 399, 43 S.Ct. at 626. The Court also concluded that the term "liberty" in the Fourteenth Amendment protected a foreign language instructor's "right thus to teach and the right of parents to engage him so to instruct their children." *Id.* at 400, 43 S.Ct. at 627. The Court held that "the statute as applied is arbitrary and without reasonable relation to any end within the competency of the State." *Id.* at 403, 43 S.Ct. at 628.

In *Prince,* a member of the Jehovah's Witness faith permitted her nine-year old niece to sell religious literature on a city street. *Prince,* 321 U.S. at 159–62, 64 S.Ct. at 438–40. Prince had legal custody of the child. *Id.* at 159, 64 S.Ct. at 438–39. Prince was convicted under Massachusetts' child labor laws. *Id.* She argued that the laws, as applied, violated the Free Exercise Clause. *Id.* at 164, 64 S.Ct. at 441. "She buttresse[d] this foundation ... with a claim of parental right as secured by the due process clause of the [Fourteenth] Amendment." *Id.* The Court recognized that there was a "private realm of family life which the state cannot enter." *Id.* at 166, 64 S.Ct. at 442. The Court, however, concluded that "the family itself is not beyond regulation in the public interest, as against a claim of religious liberty." *Id.* The Court held "that with reference to the public proclaiming of religion, upon the streets and in other similar public places, the power of the state to control the conduct of children reaches beyond the scope of its authority over adults, as is true in the case of other freedoms, and the rightful boundary of its power has not been crossed in this case." *Id.* at 170, 64 S.Ct. at 444.

*Stanley* involved an Illinois statute that made the children of unwed fathers wards of the state upon the death of the mother without a hearing on parental fitness. *Stanley,* 405 U.S. at 646, 92 S.Ct. at 1210. Illinois law, however, required a fitness hearing before the state could take custody of the children of married parents, divorced parents,

and unmarried mothers. *Id.* at 658, 92 S.Ct. at 1216. The Court held, therefore, "that denying such a hearing to Stanley and those like him while granting it to other Illinois parents is inescapably contrary to the Equal Protection Clause." *Id.*

*Skinner* held that Oklahoma's Habitual Criminal Sterilization Act violated the Equal Protection Clause because it subjected repeat larcenists to sterilization while only subjecting repeat embezzlers to imprisonment. *Skinner,* 316 U.S. at 541, 62 S.Ct. at 1113. In reaching this conclusion, the Court noted that an individual's interest in procreation was "one of the basic civil rights of man." *Id.*

In *May,* a father sought to enforce a decree that he had obtained in Wisconsin awarding him custody of his children, who were then staying with their mother in Ohio. *May,* 345 U.S. at 530–32, 73 S.Ct. at 841–43. The mother was "neither domiciled, resident nor present" in Wisconsin. *Id.* at 533, 73 S.Ct. at 843. The question presented, therefore, was whether Wisconsin could "cut off her immediate right to the care, custody, management and companionship of her minor children without having jurisdiction over her *in personam.*" *Id.* The Court ruled in favor of the mother and held that Ohio was not obligated, under the Full Faith and Credit Clause, to honor the Wisconsin decree. The Court stated, "Rights far more precious to [the mother] than property rights will be cut off if she is to be bound by the Wisconsin award of custody." *Id.*

*Lassiter* addressed the question whether an indigent parent had a constitutional right to counsel in proceedings to terminate parental rights. *Lassiter,* 452 U.S. at 24, 101 S.Ct. at 2158. The Court noted that its "decisions have by now made plain beyond the need for multiple citation that a parent's desire for and right to 'the companionship, care, custody and management of his or her children' is an important interest that 'undeniably warrants deference and, absent a powerful countervailing interest, protection.' " *Id.* at 27, 101 S.Ct. at 2159–60 (quoting *Stanley,* 405 U.S. at 651, 92 S.Ct. at 1212–13). The Court also recognized the state's interests in protecting the child from harm and in providing accurate, fair, and economical termination proceedings. *Id.* at 27–28, 101 S.Ct. at 2159–60. After weighing these competing factors under the due process framework set forth in *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), the Court concluded that the Constitution did not always require the appointment of counsel in such proceedings. *Lassiter,* 452 U.S. at 31, 101 S.Ct. at 2161–62. Rather, the Court decided to "leave the decision whether due process calls for the appointment of counsel for indigent parents in termination proceedings to be answered in the first instance by the trial court, subject, of course, to appellate review." *Id.* at 32, 101 S.Ct. at 2162.

■ The fact that a court could interpret these cases broadly to hold that a parent has a constitutional right to strike a child with a belt on school grounds does not demonstrate that this protection is clearly established. "It is not ... enough to demonstrate that the constitutional norm relied on is the logical extension of principles and decisions already in the books." *Somers v. Thurman,* 109 F.3d 614, 621 (9th Cir.1997).

Sweaney asserts that the Supreme Court's decision in *Ingraham v. Wright,* 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977), supports her conclusion that she had a constitutionally protected right to strike her son with a belt because it "recognized the right of school personnel to use corporal punishment upon children under their supervision in their capacity as parens patriae over the children." Her characterization of the Court's holding in *Ingraham* is inaccurate. Although Sweaney correctly notes that the Court observed that "[t]he use of corporal punishment in this country as a means of disciplining schoolchildren dates back to the colonial period," 430 U.S. at 660, 97 S.Ct. at 1406, it did not hold that school personnel have a *constitutional* right to inflict corporal punishment. The issues before the Court in *Ingraham* were whether the paddling of students was cruel and unusual punishment under the Eighth Amendment and, if not, whether the Fourteenth Amendment's Due Process Clause required a student to be given prior notice and an opportunity to be heard before being punished. *Id.* at 653, 97

S.Ct. at 1403. The Court held that "[t]he Eighth Amendment's prohibition against cruel and unusual punishment is inapplicable to school paddlings, and the Fourteenth Amendment's requirement of procedural due process is satisfied by Florida's preservation of common-law constraints and remedies." *Id.* at 683, 97 S.Ct. at 1419.

Sweaney also relies on *Caldwell v. LeFaver*, 928 F.2d 331 (9th Cir.1991), for the proposition that the Ninth Circuit has "expressly affirmed a parent's constitutional right of privacy." *Caldwell* does not address the question whether parents have a constitutional right to inflict corporal punishment on their children. The question we addressed in *Caldwell* was whether two state social workers violated a father's constitutional rights by removing his minor children from his custody and transporting them to their mother in another state without notice or a hearing. We held that the social workers' conduct was shielded by qualified immunity. *Id.* at 334. We reasoned in Caldwell that while "[i]t is clear that a parent has a constitutionally protected interest in the custody and care of his or her children.... [I]t is also clear that this interest is not absolute." *Id.* at 333. We held that "a state agency may remove children from their parents' custody when the children are subject to immediate or apparent danger or harm." *Id.* Thus, rather than supporting Sweaney's alleged constitutional right to strike her son with a belt on school property without being subjected to an investigation by a law enforcement officer, *Caldwell* extended qualified immunity to a law enforcement officer who takes steps to protect a child from physical harm in an emergency situation.

■ Finally, Sweaney cites the Idaho Court of Appeals decision in *State v. Peters*, 116 Idaho 851, 780 P.2d 602 (Ct.App.1989), Idaho Code § 18–1501(2), and numerous cases from other states in an attempt to demonstrate that a parent's right to use reasonable corporal punishment is widely accepted and is, therefore, clearly established. Section 1983, however, only creates a cause of action for violations of the federal "Constitution and laws." 42 U.S.C. § 1983. "To the extent that the violation of a state law

amounts to the deprivation of a state-created interest that reaches beyond that guaranteed by the federal Constitution, Section 1983 offers no redress." *Lovell v. Poway Unified Sch. Dist.*, 90 F.3d 367, 370 (9th Cir.1996).

We are persuaded that Sweaney did not have a clearly established federal constitutional right to strike her child with a belt on public school grounds on the date Deputy Michie filed her report with the prosecuting attorney. Our conclusion is supported by our decision in *Backlund*. In that case, two state social workers investigated a complaint alleging that a child had been abused by her foster parents. The foster parents "explained that they followed a 'Biblical mandate' requiring them to spank Pamela occasionally with a paddle or stick." *Backlund*, 778 F.2d at 1387. When the foster parents refused to stop using corporal punishment, the social workers removed the child from their custody. *Id.* The foster parents eventually petitioned successfully to recover the child and adopted her formally. *Id.* They then filed a § 1983 action against both social workers and their supervisor on the grounds that the foster parents' treatment of the child was "a constitutionally protected exercise of sincere religious beliefs" and that the defendants knew "their interference with this protected conduct was unconstitutional." *Id.* at 1388. We concluded that the plaintiffs had failed to demonstrate a clearly established right. *Id.* at 1389. Although we felt the distinction between the rights of foster parents and those of natural parents was an important factor in the analysis, we also relied on the fact that "even natural parents have no clearly established right to unlimited exercise of religious beliefs on their children." *Id.* (citing *Prince*, 321 U.S. at 166, 64 S.Ct. at 442).

Sweaney's claim of a clearly established right should be rejected for the same reason. Parents have no more of an unlimited right to inflict corporal punishment on their children under the Fourth and Fourteenth Amendments than they do under the Free Exercise Clause. In *Prince*, the Court stated that "neither rights of religion *nor rights of parenthood* are beyond limitation." *Prince*, 321 U.S. at 166, 64 S.Ct. at 442 (emphasis added). In *Wisconsin v. Yoder*, 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972), the Court instructed that "[t]o be

sure, the power of the parent, even when linked to a free exercise claim, may be subject to limitation under *Prince* if it appears that parental decisions will jeopardize the health or safety of the child...." *Yoder,* 406 U.S. at 233–34, 92 S.Ct. at 1542. In *Lassiter,* the Court recognized that "the State has an urgent interest in the welfare of the child...." *Lassiter,* 452 U.S. at 27, 101 S.Ct. at 2160. The only way that a state can ensure that parents have not exceeded the limits of their responsibility to discipline their children is to permit public officers to investigate alleged incidents of child abuse and report their findings to a prosecuting authority. At the time of Deputy Michie's challenged conduct, there was no case law setting forth the nature and scope of a parent's alleged federal constitutional right to impose physical discipline on a child, nor was there a federal statute that created this right. Sweaney has failed to demonstrate that binding authority on the date Deputy Michie filed her report would support a reasonable conclusion that a parent had the constitutional right to strike her child with a belt repeatedly on school grounds without having such conduct investigated and reported as a possible violation of state law protecting a child from injury by a parent. Because we conclude that Sweaney has failed to meet her burden in demonstrating that Deputy Michie violated a clearly established right, we do not consider the question whether Sweaney's conduct was objectively reasonable.[3]

### III.

■ Because Deputy Michie did not violate a constitutional right that was clearly established on the date she filed her report, we must also affirm the district court's dismissal of Sweaney's federal claims against Ada County and Sheriff Killeen. "While the liability of municipalities doesn't turn on the liability of individual officers, it is contingent on a violation of constitutional rights." *Scott v. Henrich,* 39 F.3d 912, 916 (9th Cir.1994). In this case, "the municipal defendants cannot be held liable because no constitutional violation occurred." *Id.*

Having dismissed all of Sweaney's federal claims, the district court had the discretion to dismiss the supplemental state law claims without prejudice to Sweaney's right to refile them in state court pursuant to 28 U.S.C. § 1367(c). *See Acri v. Varian Assocs., Inc.,* 114 F.3d 999, 999–1000 (9th Cir.1997) (en banc). Sweaney does not challenge the district court's dismissal of her state law claims pursuant to § 1367(c).

### IV.

Sweaney asserts that the district court erred in denying her motion to amend her complaint to allege additional § 1983 claims against Ada County and Sheriff Killeen which include (1) more specific allegations of Deputy Michie's improper motives and (2) an allegation that her constitutional rights were infringed as a result of an unconstitutional policy or custom of Ada County.

■ "While a district court's action on a motion for leave to amend should be reversed only if the action is an abuse of discretion, there is a 'strong policy to permit the amending of pleadings,' and denial of a motion to amend must be reviewed 'strictly.'" *Gabrielson v. Montgomery Ward & Co.,* 785 F.2d 762, 765 (9th Cir.1986) (quoting *Howey v. United States,* 481 F.2d 1187, 1190 (9th Cir.1973); *Klamath–Lake Pharmaceutical Assoc. v. Klamath Med. Serv. Bureau,* 701 F.2d 1276, 1292 (9th Cir.1983)).

After a responsive pleading has been filed, a party may amend a pleading "only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Fed. R. Civ. Proc. 15(a). The record shows that Ada County filed a responsive pleading prior to Sweaney's motion to amend her complaint. Sweaney does not assert that Ada County gave written consent to an amendment of the complaint. Thus, we must determine whether "justice requires" a holding that the district court abused its discretion in denying Sweaney's motion to amend.

■ "Several factors govern the propriety of a motion to amend: (1) undue delay, (2) bad faith, (3) prejudice to the opponent, and (4) futility of amendment." *Gabrielson,*

---

**3.** In their motion for summary judgment, the defendants pointed out that the prosecutor made an independent determination that probable cause existed to charge Sweaney under § 18–1501(2). This discussion, however, related only to the inquiry into the reasonableness of Deputy Michie's conduct. This inquiry is necessary only when the plaintiff has identified a clearly established right. *See Romero,* 931 F.2d at 627.

785 F.2d at 766. The district court held that "Plaintiff's proposed amendments are futile and must be denied." "[A] proposed amendment is futile only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir.1988).

Sweaney requested permission to amend the complaint to allege that Ada County's policies "were a direct and proximate cause of the unconstitutional criminal prosecution and resulting deprivation of the plaintiff's constitutional rights alleged herein." Sweaney identified these polices as: 1) "[f]ailure to properly train, supervise, discipline, counsel or otherwise control juvenile detectives in the proper investigation and referral for prosecution and evidence preservation in matters involving the exercise of a parent's constitutional right to use reasonable physical discipline upon his/her child"; and 2) "[m]andatory investigation and referral for prosecution of matters involving a parent's exercise of his/her constitutional right to use reasonable physical discipline on his/her child, regardless of the existence or extent of any resulting injury to the child."

Because Sweaney was not deprived of a constitutional right, the municipal defendants are also shielded from liability for Deputy Michie's conduct. *Scott*, 39 F.3d at 916. Thus, the proposed amendment to add allegations involving Ada County's governmental policy would have been futile in advancing her § 1983 claim.

Sweaney additionally proposed to amend her complaint with specific allegations that Deputy Michie's conduct demonstrated an improper motivation. Deputy Michie's subjective intent is not relevant to the reasonableness prong of the qualified immunity test because that factor is governed by an objective test. *Anderson*, 483 U.S. at 641, 107 S.Ct. at 3039–40. Because Deputy Michie did not violate a clearly established right, the district court did not err in denying an amendment containing facts regarding her subjective motivation.

## CONCLUSION

Because Sweaney has failed to demonstrate that she had a clearly established fed-

eral constitutional right to strike her son with a belt without being subjected to an investigation to determine whether her conduct violated an Idaho statute enacted to protect children from injury, we uphold the district court's determination that Deputy Michie was entitled to protection from suit under the doctrine of qualified immunity. Since Sweaney has failed to demonstrate that Deputy Michie violated a clearly established federal constitutional right, the district court did not err in dismissing her claims against Ada County and Sheriff Killeen. Having properly dismissed the federal claim, the district court did not err in declining to exercise its supplemental jurisdiction over the state law claims. The district court did not abuse its discretion in holding that the proposed amendments to the complaint would be futile because they did not demonstrate a clearly established federal constitutional right. Therefore, the district court's judgment is AFFIRMED.