**Clyde ARAKAWA, Plaintiff,**

v.

**Ronald SAKATA, Chief Adjudicator of the Administrative Driver's License Revocation Office, in his individual capacity, Defendant.**

No. CV00–761 DAE–KSC.

United States District Court,
D. Hawaii.

March 6, 2001.

Michael G.M. Ostendorp, Honolulu, HI, for Clyde Arakawa, plaintiff.

Earl I. Anzai, John P. Dellera, Office of the Attorney General–Hawaii, Russell A. Suzuki, Department of the Attorney General, Education Division, Honolulu, HI, for Ronald Sakata, Chief Adjudicator of the Administrative Driver's License Revocation Office, in his individual capacity, defendant.

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

DAVID ALAN EZRA, Chief Judge.

The court heard Defendant's Motion on March 5, 2001. John P. Dellera, Deputy Attorney General, appeared on the briefs or at the hearing on behalf of Defendant; Shawn Luiz, Esq., appeared on the briefs or at the hearing on behalf of Plaintiff. After reviewing the motion and the supporting and opposing memoranda, the court GRANTS Defendant's Motion to Dismiss Complaint.

### BACKGROUND [1]

On October 7, 2000, Plaintiff was involved in a two-car collision in Honolulu which resulted in the death of the driver of the other car. He refused to take a breath or blood test, and was subsequently arrested on suspicion of Driving Under the Influence of Intoxicating Liquor and Negligent Homicide. Accordingly, his driver's license was administratively revoked in proceedings before the Hawaii Administrative Driver's License Revocation Office ("ADLRO").

1. For purposes of a Motion to Dismiss, the court accepts as true all background facts alleged in the Complaint.

Plaintiff alleges that in the aftermath of the accident, ADLRO released private information about him, including his address, birth date, social security number, and police reports relating to the accident. News outlets picked up this information and widely disseminated it.[2] On November 14, 2000, Plaintiff filed suit against Ronald Sakata ("Defendant"), Chief Adjudicator of ADLRO in his individual capacity. The Complaint alleges violations of: (1) Hawaii Revised Statutes Chapter 92F (right to maintenance of records), (2) the right to privacy under the constitution of the State of Hawaii, (3) the right to privacy under federal statutes and the federal constitution (though not specifying to which federal statutes he refers), and (4) 42 U.S.C. § 1983. Plaintiff claims federal question jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343 for the federal claims, and supplemental jurisdiction pursuant to 28 U.S.C. § 1367 for the state law claims.

On December 18, 2000, Defendant (represented by the State Attorney General's Office) filed the instant Motion to Dismiss. In it, he makes the following arguments: (1) there is no federal question jurisdiction because the acts complained of, even if true, do not amount to a Constitutional violation; without a federal claim, this court lacks jurisdiction, (2) Plaintiff fails to assert a cognizable claim under state law, and (3) even if Plaintiff has asserted a federal or state claim, Defendant is entitled to immunity, either absolute quasi-judicial immunity, statutory immunity, or qualified immunity. On February 14, 2001, Plaintiff filed his Opposition to Defendant's Motion to Dismiss, and on February 22, 2001, Defendant filed his Reply.

## STANDARD OF REVIEW

A motion to dismiss will be granted where the plaintiff fails to state a claim upon which relief can be granted. Fed. R.Civ.P. 12(b)(6). For the purposes of a 12(b)(6) motion, "[r]eview is limited to the contents of the complaint." *Clegg v. Cult*

*Awareness Network,* 18 F.3d 752, 755 (9th Cir.1994).

A complaint should not be dismissed "unless it appears beyond doubt that plaintiff can prove no set of facts in support of [his] claim which would entitle [him] to relief." *Buckey v. County of Los Angeles,* 968 F.2d 791, 794 (9th Cir.1992) (quoting *Love v. United States,* 915 F.2d 1242, 1245 (9th Cir.1989)) (further citations omitted). All allegations of material fact are taken as true and construed in the light most favorable to the plaintiff. *Id.*

To the extent, however, that "matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment." Fed.R.Civ.P. 12(b); *Del Monte Dunes at Monterey, Ltd. v. Monterey,* 920 F.2d 1496, 1507 (9th Cir.1990).

## DISCUSSION

### A. Federal Claim

The court first addresses Defendant's argument that Plaintiff has failed to state a federal cause of action. Plaintiff's federal claim is that he was deprived of his Constitutional right to privacy under the Fourteenth Amendment. Chapter 42 Section 1983 of the United States Code is the proper method by which plaintiffs may complain of alleged constitutional violations by state officers. *See Azul–Pacifico, Inc. v. Los Angeles,* 973 F.2d 704, 705 (9th Cir.1992) ("a litigant complaining of a violation of a constitutional right must utilize 42 U.S.C. § 1983.") (citations omitted); *see also Baker v. McCollan,* 443 U.S. 137, 146, 99 S.Ct. 2689, 61 L.Ed.2d 433 (noting that § 1983 only imposes liability for federal constitutional violations, not for violations of state tort law). To make out a claim under § 1983, a plaintiff must show that: (1) the action occurred under color of state law, and (2) the action resulted in a deprivation of a constitutional right or a federal

---

**2.** In his Declaration attached to the instant Motion, Defendant asserts that the information was released to news media pursuant to

their requests under Hawaii's Freedom of Information Act, Haw.Rev.Stat. § 92F.

statutory right. *See McDade v. West,* 223 F.3d 1135 (9th Cir.2000). If Plaintiff has failed to state a federal claim, the Complaint in this court must be dismissed for lack of subject matter jurisdiction. *See Chicago v. International College of Surgeons,* 522 U.S. 156, 164, 118 S.Ct. 523, 139 L.Ed.2d 525 (1997); 28 U.S.C. § 1367(a).

At issue in the instant case is the second prong of the § 1983 test, and the question for the court thus becomes: do Plaintiff's allegations give rise to a constitutional violation? In other words, assuming that Defendant did release Plaintiff's personal information (such as birth date, address and social security number) to the media, does this amount to a deprivation of constitutionally protected privacy rights?[3] Any discussion of constitutionally protected privacy rights in records such as those at issue here must begin with *Whalen v. Roe,* 429 U.S. 589, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977).

In *Whalen,* the Supreme Court considered the validity of a state statutory scheme which required that certain information about medical patients (such as their names, addresses, ages, physicians and prescription information) be filed with the state department of health. Doctors and patients argued that this system violated the constitutionally protected "zone of privacy" inherent in the doctor-patient relationship. *Id.* at 598–99, 97 S.Ct. 869. The Court explained that there are two types of privacy interests that may be constitutionally protected. "One is the individual interest in avoiding disclosure of personal matters, and another is the interest in independence in making certain kinds of important decisions." *Id.* at 599–600, 97 S.Ct. 869; *see also Nixon v. Administrator of Gen. Servs.,* 433 U.S. 425, 457, 97 S.Ct. 2777, 53 L.Ed.2d 867 (1977); *In re Crawford,* 194 F.3d 954, 958 (9th Cir.1999). The Court did not elaborate, however, on the extent of the constitutional privacy protection, because it held that

the state statutory scheme evidenced "a proper concern with, and protection of, the individual's interest in privacy." *See id.* at 605–06, 97 S.Ct. 869 ("We therefore need not, and do not, decide any question which might be presented by the unwarranted disclosure of accumulated private data ...").

In the years since *Whalen,* courts have struggled to define the limits of a constitutional right to privacy, especially with respect to disclosure of personal matters. *See, e.g., Crawford,* 194 F.3d at 958 ("the Supreme Court has expressed uncertainty regarding the precise bounds of the constitutional 'zone of privacy' "); *Kallstrom v. Columbus,* 136 F.3d 1055, 1060 (6th Cir. 1998) ("the boundaries of the right to privacy have not been clearly delineated"); *American Federation of Govt. Employees v. Dept. of Housing and Urban Dev't,* 118 F.3d 786, 793 (D.C.Cir.1997) ("numerous uncertainties attend this issue"); *Eagle v. Morgan,* 88 F.3d 620, 625 (8th Cir.1996) ("the exact boundaries of this right are, to say the least, unclear"); *James v. Douglas,* 941 F.2d 1539, 1543 (11th Cir.1991) ("the constitutional right to privacy has vague contours and has been in a state of flux in recent years"); *Woods v. White,* 689 F.Supp. 874, 875 (W.D.Wis.1988) ("the Supreme Court has given little specific guidance in defining privacy rights") *aff'd* 899 F.2d 17 (7th Cir.1990). Several courts have found that there exists a violation of a constitutional privacy right in the public disclosure of private medical information, but beyond this, there is no real consensus. *See, e.g., Doe v. Attorney General,* 941 F.2d 780 (9th Cir.1991) (collecting cases); *Doe v. New York,* 15 F.3d 264 (2nd Cir. 1994); *United States v. Westinghouse Elec. Corp.,* 638 F.2d 570 (3d Cir.1980); *Woods,* 689 F.Supp. 874.

One recent Ninth Circuit case to explore constitutional informational privacy rights is *Crawford,* 194 F.3d 954. In that case, a non-attorney bankruptcy petition preparer

---

3. In Hawaii, birth dates, addresses and social security numbers were all noted on drivers' licenses until a recent amendment to state law which removed social security numbers and replaced them with a number assigned by the drivers' license division of the city and county where the license is obtained.

("BPP") objected to the federal statute (11. U.S.C. § 110(c)) requiring BPPs to provide their social security numbers ("SSN") on documents they submit to the court. *Id.* at 956. He claimed that forcing him to release his social security number on public court documents violated his right to privacy in his SSN, and subjected him to the possibility of credit card fraud. *See id.* The court stated that "the indiscriminate public disclosure of SSNs, especially when accompanied by names and addresses, may implicate the constitutional right to informational privacy." *Id.* at 958. It went on to note that a SSN is a unique and private identifier, not generally disclosed to the public, and that "disclosure of SSNs can raise serious privacy concerns." *Id.; see also* 18 U.S.C. §§ 2721–23 ("The Driver Privacy Protection Act") (prohibiting the states from releasing confidential information contained in drivers' records, such as SSNs and addresses);[4] *Painting Indus. of Hawaii v. Dept. of Air Force,* 26 F.3d 1479, 1482–83 (9th Cir.1994) (recognizing "substantial privacy interests" related to the disclosure of federal payroll records under FOIA).

Nevertheless, the court held that the statute in question did not violate a constitutional right to privacy because the statute was justified by a proper governmental interest. *Id.* at 959 ("The right to informational privacy, however, 'is not absolute; rather, it is a conditional right which may be infringed upon a showing of proper governmental interest.'") (quoting *Doe v. Attorney General,* 941 F.2d at 796). In determining whether there is such a proper governmental interest, the government bears the burden of establishing that " 'its use of the information would advance a legitimate state interest and that its actions are narrowly tailored to meet the legitimate state interest.'" *Id.* (citations omitted). Relevant factors to consider in making this evaluation include, among others:

> the type of record requested, the information it does or might contain, the potential for harm in any subsequent nonconsensual disclosure, the injury from disclosure to the relationship in which the record was generated, the adequacy of the safeguards to prevent unauthorized disclosure, the degree of need for access, and whether there is an express statutory mandate, articulated public policy, or other recognizable public interest militating toward access.

*Id.* (citations omitted). After considering these factors, the *Crawford* court found

---

4. The Driver Privacy Protection Act ("DPPA") faced numerous constitutional challenges after its enactment, before finally being upheld by the Supreme Court in *Reno v. Condon,* 528 U.S. 141, 120 S.Ct. 666, 145 L.Ed.2d 587 (2000). In one such challenge, the Western District of Wisconsin found that the DPPA was not a valid exercise of Congress' authority under the Fourteenth Amendment because there was no constitutional right to privacy in the information contained in drivers' licenses. *See Travis v. Reno,* 12 F.Supp.2d 921, 925 (W.D.Wis.1998) ("There is no constitutional right to privacy in the disclosure of this information because there is no legitimate expectation of confidentiality regarding it."). The court went on to find that the Act violated the Tenth Amendment. The Seventh Circuit reversed the district court, finding no Tenth, Eleventh, or commerce clause problems with the Act, but did not address the Fourteenth Amendment issue. *See Travis v. Reno,* 163 F.3d 1000 (7th Cir.1998). Similarly, when the Fourth Circuit decided *Condon v. Reno*

(which the Supreme Court later reversed), it held that no constitutional privacy right attached to information contained in drivers' licenses because it "is not the sort of information to which individuals have a reasonable expectation of privacy." 155 F.3d 453, 465 (4th Cir.1998). This is because vehicle licensing is a pervasive scheme of regulation, the same type of information is available from other sources, vehicle records are often treated as public, and the information is commonly voluntarily provided to private parties. *See id.; see also Pryor v. Reno,* 171 F.3d 1281, 1288 (11th Cir.1999) (also finding no privacy protection in motor vehicle records) *overruled on other grounds by Condon,* 528 U.S. 141, 120 S.Ct. 666. Like the Seventh Circuit in *Travis,* when the Supreme Court decided *Condon,* it did not address the issue of constitutional privacy rights with respect to driver's license information, instead deciding the case based on the Tenth Amendment and commerce clause grounds. 528 U.S. 141, 120 S.Ct. 666.

that the statute legitimately served to remedy the problem of fraud and unauthorized practice of law in the BPP field. In addition, it helped to foster "confidence among creditors regarding the fairness of the bankruptcy system." *Id.* at 960. The court weighed these governmental purposes with the fact that, "unlike personal facts [such as medical history or sexual orientation], a SSN is not inherently sensitive or intimate information, and its disclosure does not lead directly to injury, embarrassment or stigma." *Id.* The court, then, ultimately held that the importance of the statute outweighed any potential privacy concerns. *Id.*

Other courts that have considered the privacy interests related to the disclosure of personal information have achieved varying results; few have considered specifically the kind of information at issue in the instant case. In *American Federation of Govt. Employees,* for example, the D.C. Circuit considered the requirement that certain federal government employees disclose information about illegal drug use and financial history. *See* 118 F.3d at 788. The court expressed "grave doubts as to the existence of a constitutional right of privacy in the nondisclosure of personal information," especially where "the information is collected by the Government but not disseminated publicly." 118 F.3d at 791–93. The court stopped short of declaring outright that no such privacy right existed, because it found that the governmental interest in obtaining the information outweighed any potential privacy violation. *Id.* at 793; *see also Morris v. Danna,* 411 F.Supp. 1300 (D.Minn.1976) *aff'd* 547 F.2d 436 (8th Cir.1977) (pre-*Whalen* case holding that welfare official's release of plaintiff's welfare status to the media did not amount to a constitutional violation).

Some courts have held that where the government releases information, it must be of a highly personal nature before constitutional privacy rights will attach. *See Eagle,* 88 F.3d at 625. In *Eagle,* the Eighth Circuit held that a city's release of an expunged guilty plea did not violate the

right to privacy. *Id.* It noted that "to violate [a person's] constitutional right of privacy, the information disclosed must be either a shocking degradation or an egregious humiliation." *Id.* (also stating that constitutional privacy protection extends only to "the most intimate aspects of human affairs" and that a person's "legitimate expectation of privacy" bears on the constitutional analysis); *see also Stoianoff v. Commissioner of Motor Vehicles,* 107 F.Supp.2d 439 (S.D.N.Y.2000) (holding that "mandatory disclosure of an individual's SSN to DMV does not threaten the sanctity of individual privacy so as to require constitutional protection," and finding that constitutional privacy rights apply only to more personal matters such as marriage, procreation, family, etc.); *Cinel v. Connick,* 15 F.3d 1338 (5th Cir.1994) (no constitutional violation of plaintiff's/clergyman's rights where district attorneys office released names and addresses of men who had appeared in sex video with him).

In *Beacon Journal Publishing Co. v. Akron,* on the other hand, a newspaper sought to compel the city to release the SSNs of city employees pursuant to a state open records act; the city had previously refused to provide the information. 70 Ohio St.3d 605, 640 N.E.2d 164 (1994). In that case, the Ohio Supreme Court held unequivocally that "the disclosure of the SSNs would violate the federal constitutional right to privacy." *Id.,* 640 N.E.2d at 166. The court first held that individuals possess a reasonable expectation of privacy in their SSNs. *See id.* at 168. This expectation is engendered in part by the "federal legislative scheme involving the use of SSNs," specifically the Privacy Act of 1974, which was enacted to "eliminate the threat to individual privacy and confidentiality of information posed by common numerical identifiers." *Id.* at 167. Second, the court held that the privacy interests inherent in SSNs were intensified by the potentially significant harm that could result from their release. *See id.* at 168. For example:

armed with one's SSN, an unscrupulous individual could obtain a person's wel-

fare benefits or Social Security benefits, order new checks at a new address on that person's checking account, obtain credit cards, or even obtain the person's paycheck.... Succinctly stated, the harm that can be inflicted from the disclosure of a SSN to an unscrupulous individual is alarming and potentially financially ruinous.

*Id.* (quoting *Greidinger v. Davis,* 988 F.2d 1344 (4th Cir.1993)). Accordingly, the court found that there was a constitutional privacy right in SSNs which was not outweighed by any governmental interest in releasing the information. *See id.* at 169 (but also finding that there was no such right inherent in the release of addresses or birth dates); *see also Smith v. Dayton,* 68 F.Supp.2d 911, 918 (S.D.Ohio 1999) (holding that city's release to newspaper of address, unlisted phone number, and other identifying information of police officer who had been involved in fatal shooting violated his constitutional right to privacy); *cf. Sheets v. Salt Lake Co.,* 45 F.3d 1383 (10th Cir.1995) (finding constitutional violation where county released diary of murder victim, which it had in its possession); *Greidinger,* 988 F.2d 1344 (striking down voter registration scheme which required disclosure of SSNs (which then became available to anyone purchasing voter registration lists) because of substantial interest in keeping SSNs confidential). *But see Pontbriand v. Sundlun,* 699 A.2d 856, 869–70 (R.I.1997) (finding no constitutional right to privacy in SSNs).

■ After considering the voluminous and largely ambiguous case law on the subject, the court concludes that there is a constitutional right to privacy in the information released about Plaintiff in this case, specifically his SSN. The Ninth Circuit noted as much in *Crawford,* 194 F.3d 954. The public release of a SSN could lead to problems related to credit card fraud or identity theft. In addition, a SSN may provide an unscrupulous person with access to an individual's medical, financial, or other sensitive records; records that have become all the easier to obtain thanks to the Internet. Further, the court cannot conceive of any state interest in this case that would be sufficient to outweigh Plaintiff's privacy rights in his SSN. This is particularly true where the state has already indicated that SSNs should generally be kept confidential. *See* Haw.Rev.Stat. § 92F–13 (exceptions to the rule of disclosure of Government records). Section 92F–13 does not by its terms explicitly protect SSNs; it protects disclosure of documents which "would constitute a clearly unwarranted invasion of personal privacy." However, in Opinion Letters put out by the Office of Information Practices (summarized after the statute), it is apparent that Hawaii considers the disclosure of SSNs an "unwarranted invasion of personal privacy." *See, e.g.,* Op. Ltr. No. 99–2 (stating that police reports should be available for public inspection after redaction of defendant's SSN, address and telephone number); Op. Ltr. 96–4 (allowing inspection of the Hawaii Criminal Justice Data Center's Inquiry Screens as long as the convicted person's SSN is redacted); Op. Ltr. No. 94–8 (noting that the SSN, home phone and home address of a successful candidate for Metropolitan Police Chief should not be released); *see also* Haw.Rev. Stat. § 92F–14(5) (providing that there is a "significant privacy interest" in a person's finances, income, financial history, credit worthiness, etc.); *see also* "Driver Privacy Protection Act," 18 U.S.C. §§ 2721–2725 (prohibiting the states from releasing drivers' SSNs).

The court recognizes that much of the case law from other jurisdictions appears reluctant to grant such a cause of action. In *Condon,* for example, the Fourth Circuit held that there is no legitimate expectation of privacy in information contained in a driver's license. 155 F.3d at 465; *accord Pryor,* 171 F.3d at 1288; *Travis,* 12 F.Supp.2d at 925. Any time there is a pervasive regulatory scheme, such as with drivers' licensing, expectations of privacy are reduced. Moreover, drivers' licenses are regularly disclosed to third parties such as store clerks (when cashing a check) or credit card companies, and do

not contain the types of personal information generally protected from disclosure (such as medical records). *See id.; Crawford* at 960.

Still, the court must conclude that the release of a SSN potentially rises to the level of a federal constitutional violation, especially when considering the amount of highly personal information that can be recovered as a result of its release.[5] Because this court has held that Plaintiff has stated a claim under the constitution and, accordingly, 42 U.S.C. § 1983,[6] the court must next turn to the issue of whether Defendant is nevertheless entitled to immunity from federal suit.

### B. Immunity Defenses

Defendant raises three separate immunity defenses: (1) absolute quasi-judicial immunity, (2) statutory immunity under Haw.Rev.Stat. § 92F–16, and (3) qualified immunity. The court turns first to the question of qualified immunity.

Qualified immunity protects state and local officials from suit as long as their conduct did not "violate clearly established [federal] statutory or constitutional rights of which a reasonable person would have known." *Manhattan Beach Police Officers Assoc. v. Manhattan,* 881 F.2d 816, 818 (9th Cir.1989) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)); *Flowers v. Seki,* 45 F.Supp.2d 794, 808–09 (D.Hawai'i 1998). The doctrine provides broad protection, immunizing "state and local officials from

their exercise of poor judgment," and only failing to protect "those that are 'plainly incompetent or those who knowingly violate the law.'" *Flowers,* 45 F.Supp.2d at 809 (citing *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)).

The Ninth Circuit has established three factors which district courts are to consider in deciding whether an official is entitled to qualified immunity: (1) whether the plaintiff has identified a specific federal statutory or constitutional right that has been allegedly violated, (2) whether that right was so clearly established as to alert a reasonable official to its parameters, and (3) whether a reasonable officer could have believed his or her conduct was lawful. *Sweaney v. Ada County,* 119 F.3d 1385, 1388 (9th Cir.1997) (citing *Newell v. Sauser,* 79 F.3d 115, 117 (9th Cir.1996)). After considering these factors, the court must conclude that Defendant is entitled to qualified immunity.

The constitutional right to privacy in a SSN has not been clearly established, and its parameters have not been clearly defined, as the discussion in Section A of this opinion demonstrates. The plaintiff bears the burden of proving the existence of a clearly established right. *See Sweaney,* 119 F.3d at 1388. Prior to now, there has not been one case or statute in the relevant jurisdiction establishing a constitutional right to privacy in a SSN. A reasonable officer in Defendant's circumstances easily could have believed that his conduct—releasing information pertaining

---

**5.** This is not to suggest that all governmental releases of an individual's SSN will amount to a constitutional violation. In the proper circumstances, privacy interests in a SSN may well be outweighed by legitimate governmental interests. Likewise, the court is not holding that statutes or regulations requiring individuals to supply the government with their SSNs will amount to a constitutional violation, again, provided that the statutes or regulations serve a legitimate governmental purpose, such as in *Crawford,* 194 F.3d 954. Here, the court is merely finding that in the absence of any overriding governmental interest, as here, the release of an individual's SSN amounts to a constitutional violation.

**6.** Count III of Plaintiff's Complaint alleged violations "under the federal statutes and constitution," but did not specify to which federal statutes he was referring. In his Motion, Defendant speculates that perhaps Plaintiff means to assert claims under the Federal Privacy Act, 42 U.S.C. § 552(a). In his Opposition, Plaintiff's arguments are based solely on the constitutional question and not on any federal statutory causes of action. The court cannot act on unarticulated federal statutory claims, and therefore dismisses the federal statutory claims (such as they are) as unpled.

to Plaintiff's fatal, possibly alcohol-related, car accident pursuant to requests under Hawaii's freedom of information laws—was lawful. No statute requires ADLRO records to be kept confidential, much less indicates that they are deserving of constitutional protection.[7] While Defendant may have exercised poor judgment in, at least, not redacting Plaintiff's SSN, the court cannot conclude that he knowingly violated a clearly established constitutional right.[8]

■ Accordingly, Defendant is entitled to qualified immunity on Plaintiff's federal claims and those claims are, therefore, dismissed. Because the court finds that qualified immunity applies in this case, it need not reach the questions of absolute quasi-judicial or statutory immunity. Dismissal of federal claims provides the district courts with discretion to dismiss without prejudice a plaintiff's related state law claims. *See Sweaney,* 119 F.3d at 1392; 28 U.S.C. § 1367. Because this case presents novel issues of state law (in addition to the novel issues of federal law already addressed) which should first be addressed by the state courts, this court dismisses the state law claims without prejudice to Plaintiff's right to refile in state court.

### CONCLUSION

For the reasons stated above, the court GRANTS Defendant's Motion to Dismiss the Complaint.

IT IS SO ORDERED.

---

7. While the State of Hawaii may prohibit a private person from going to the Department of Motor Vehicles and obtaining a copy of someone else's driver's license, that is an entirely different matter from the media making a request under Hawaii's Uniform Information Practices Act for information related to proceedings before the ADLRO. Moreover, the question of whether Defendant violated a clearly established *state* right is not before the court; that is a matter for the state court to decide.

8. As explained earlier in footnote 6, Plaintiff failed to properly plead violations of any federal statutory (as opposed to constitutional) rights. As the court explained in *Sweaney,* Plaintiff bears the burden of identifying a *"specific* federal statutory or constitutional right that has been allegedly violated." 119 F.3d at 1388 (emphasis added). Because Plaintiff has not done so, the court cannot address the question of whether Defendant violated any clearly established federal statutory rights.